[No. 44631. En Banc. February 23, 1978.]

GRANGE INSURANCE ASSOCIATION, *Respondent,* v. GREAT AMERICAN INSURANCE COMPANY, *Appellant.*

*Reed, McClure, Moceri & Thonn, P.S.,* by *William R. Hickman,* for appellant.

*Frederick B. Hayes, Rush & Kleinwachter,* and *Nicholas D. N. Harvey, Jr.,* for respondent.

HOROWITZ, J.—This declaratory judgment action was brought to determine which of two insurance companies, if either, is obligated to provide uninsured motorist coverage (UMC) to an injured City of Tacoma policeman.

Two issues are presented. The first is whether the preparation and publication of bid specifications for Tacoma's liability insurance policy without a provision for UMC constituted a valid rejection of UMC within the meaning of RCW 48.22.030, the uninsured motorist coverage statute. Upon that question depends the liability of appellant Great American Insurance Company (Great American), which provides Tacoma's automobile liability coverage. The second issue is whether a clause excluding UMC when the insured is injured while occupying a vehicle furnished for his regular use is valid. That question determines the liability of respondent Grange Insurance Association (Grange), whose automobile liability policy with the injured man (apparently issued in Washington) includes a UMC endorsement with that exclusionary clause. We hold that the preparation and publication of Tacoma's bid specifications did constitute a valid rejection of UMC, and that the exclusion clause in Grange's policy is repugnant to the statute and void. The consequence of this result is that Great American does not provide UMC to this injured man, and Grange does.

The injured policeman, Donald Vogt, was sitting in a Tacoma police car in the course of his duties when the car was struck from the rear by a vehicle operated by an uninsured driver. Vogt's own automobile insurance policy with respondent Grange includes a UMC endorsement. The Great American policy issued to the City of Tacoma provides automobile liability coverage to city employees acting on behalf of the City, and states that it is primary insurance. It does not, however, contain a UMC endorsement.

Grange brought this action against Great American, the City of Tacoma, Donald Vogt, and the uninsured driver seeking a declaration that Great American provides UMC to Vogt and Grange does not. The parties entered into a

stipulation as to partial settlement and dismissal, whereby Vogt accepted $15,000 and released both insurance companies from any further liability. All parties were dismissed except the two companies. Each had contributed $7,500 to the settlement without admitting liability, and determined to litigate the question of which, if either, is liable. The Pierce County Superior Court entered an order granting summary judgment in favor of Grange, holding that Great American provides UMC which is applicable to Officer Vogt's accident, and that coverage is primary. It further held that Great American is obligated to reimburse Grange in the amount of $7,500. We reverse and hold that Grange must reimburse Great American in the amount of $7,500.

On appeal, Great American contends UMC was rejected by its insured, the City of Tacoma, in compliance with the requirements of RCW 48.22.030, by the omission from its bid proposal of any provision for UMC. Pointing to Grange's UMC endorsement, Great American maintains Grange alone is liable to Officer Vogt for the minimum UMC coverage of $15,000 required by RCW 48.22.030, and must bear the full cost of the settlement. Thus, it is argued, Grange must reimburse Great American for the $7,500 it contributed to the settlement.

Grange, on the other hand, claims Great American's policy does provide UMC because Tacoma did not expressly reject it. Grange further argues it bears no liability for this accident for two reasons. First, it contends Great American's coverage is primary and Grange's secondary. It relies on condition No. 10 of its endorsement, the "excess insurance" clause, which makes Grange's coverage applicable only after other insurance has been fully paid. If the Great American policy provides UMC, it must do so in the statutory minimum amount of $15,000, which is equal to the amount of the settlement with Officer Vogt. Thus, Grange claims, its own coverage is not applicable. We do not reach this issue because we hold that Great American provides no UMC whatsoever. The argument that Great American's

coverage is primary and Grange's "excess" is therefore irrelevant.[1]

Grange also argues, however, that it does not provide coverage for this accident because Officer Vogt was injured while sitting in a police car. It relies on an exclusion in its endorsement which excludes coverage when the insured is injured while occupying a vehicle furnished for his regular use. For this additional reason Grange maintains it bears no liability here.

The first issue presented, whether the Great American policy provides UMC by operation of law, requires us to interpret for the first time the rejection clause of the uninsured motorist coverage statute, RCW 48.22.030. Under the terms of that statute every motor vehicle liability policy issued in this state must provide UMC, "except that the named insured may be given the right to reject such coverage." Absent a valid rejection, the required coverage will be read into any policy which does not contain a UMC endorsement. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972). The question before us here is whether the preparation and publication of bid specifications for the City of Tacoma's liability policy without provision for UMC constitutes a rejection of UMC within the meaning of the statute. We hold that it does.

■ Washington's UMC statute is one of several such state statutes which do not expressly require a rejection to be in writing. Those of Georgia and Mississippi, for example, do require a writing. Ga. Code Ann. § 56–407.1; Miss. Code Annot. § 83–11–101 (Supp. 1976). In states where no writing is required by the statute, courts have required some showing that the insured knew of the existence of

---

[1]The validity of condition No. 10, commonly known as an "excess–escape" clause, is open to question, although we need not decide that matter here. Our opinion in *Cammel v. State Farm Mut. Auto. Ins. Co.,* 86 Wn.2d 264, 543 P.2d 634 (1975), casts doubt on the validity of any "other insurance" exclusion in an uninsured motorist coverage endorsement under RCW 48.22.030. Furthermore, at least one commentator has concluded that the weight of authority today is against the validity of the "excess–escape" clause. A. Widiss, *A Guide to Uninsured Motorist Coverage* § 2.59 (1969, Supp. 1976).

UMC and understood his right to reject it. *See Aetna Cas. & Sur. Co. v. Green,* 327 So. 2d 65 (Fla. Dist. Ct. App.), *cert. denied,* 336 So. 2d 1179 (Fla. 1976). Thus, where the issue is whether the documents or other transaction between a layperson and insurance agent constitute a rejection of UMC, courts have required the rejection to be "specific," "express," or "manifest." *Aldcroft v. Fidelity & Cas. Co.,* 259 A.2d 408 (R.I. 1969) (insured must reject in "specific terms"); *Abate v. Pioneer Mut. Cas. Co.,* 22 Ohio St. 2d 161, 258 N.E.2d 429 (1970) (insured must "expressly reject"); *Lamb v. Midwest Mut. Ins. Co.,* 296 F. Supp. 131 (W.D. Ark. 1969) (Arkansas statute requires insured to "manifest his choice."). Under these circumstances, execution of an unambiguous rejection or waiver clause, while not necessary, will be sufficient. *Koenig v. Mission Ins. Co.,* 106 Ariz. 75, 471 P.2d 271 (1970); *Lamb v. Midwest Mut. Ins. Co., supra; Brady v. Universal Underwriters Ins. Group,* 37 Ohio App. 2d 107, 307 N.E.2d 548 (1973).

Respondent Grange argues the Washington statute requires an express written rejection of UMC, and the bid proposal sent out by the City of Tacoma was not sufficient. Respondent points to language in *Touchette v. Northwestern Mut. Ins. Co., supra,* which suggests that a written rejection, or some other express communication, is required. *Touchette* does not control this case, however, for the court there was not interpreting the statutory requirements for a valid rejection. Our statute does not expressly require a written rejection, and we will not read such a requirement into the statute. The question of whether the City of Tacoma exercised its right to reject UMC is a question of fact to be determined from the circumstances of this particular case.

We distinguish this case from the more common situation of a layperson applying for insurance. There the insured relies heavily on the agent for information and guidance in choosing appropriate liability coverage. He is not likely to know the requirements of laws regulating insurance in this state, or of his options regarding coverage and policy limits.

Under those circumstances some overt and unambiguous expression of rejection is arguably required to ensure the applicant is apprised of the existence of UMC and of his right to accept or reject it. We take this to be the meaning of the court's references in *Touchette* to the need for a written or other express communication of rejection.

The situation here, though, is very different. The officials of the City of Tacoma who were responsible for preparation of the bid proposal for the City's liability policy were insurance and legal professionals. They were fully aware of the requirements of the UMC statute, and of their right to accept or reject such coverage. The procedure by which the bid specifications were prepared reflects close attention to the particular insurance needs of the City and its employees. The bid specifications were reviewed by the City's Insurance Advisory Committee, Insurance Supervisor, Insurance Committee, and a lawyer from the city's legal department. Testimony below indicated that UMC was not included in the bid specifications because it duplicated benefits already available to City employees. It was not included in the policy issued, and no premium was charged for it. It is proper to infer from these circumstances that the insured, the City, knew of the existence of UMC, understood its right to accept or reject the coverage, and made an informed choice to reject it.

Although the issue was not raised below or on appeal, it should be noted that the City had the authority to reject UMC from its liability policy. Under RCW 35.21.205 the City is authorized to purchase liability insurance. It is under no specific statutory obligation to purchase UMC, however. The statute contemplates the City will exercise its discretion in the selection of liability coverage and limits. Furthermore, as a named insured it is authorized by the UMC statute to reject the coverage.

We therefore hold that submission of the bid proposal to Great American was a rejection sufficient under RCW 48.22.030 to exclude UMC from the policy issued in accordance with the proposal.

█ Respondent points to a written notice of rejection of UMC executed by the City more than a year after Officer Vogt's accident as evidence that the policy afforded UMC prior to that time. We do not agree. The rights of the parties were fixed at the time of the issuance of the policy. The City did not intend to purchase UMC, and in fact rejected it by excluding that coverage from its carefully prepared bid specifications. A form rejection clause executed later with no additional consideration given cannot alter rights which were previously fixed. The written rejection may have been executed to avoid further controversy while this issue was pending. It can have no bearing, however, on the rights of the parties at the time of the accident.

The issue of liability between these two parties is not determined solely by our holding that Great American did not provide UMC. Respondent Grange maintains the UMC provided to Officer Vogt in its policy does not apply to this accident. Were that true, neither insurer would be liable for this accident, and Great American would not be entitled to recover its payment to Officer Vogt from Grange.

Grange relies on the following exclusion clause in its UMC endorsement:

EXCLUSIONS

This endorsement does not apply:

(c) to any automobile furnished for regular use to the named insured and, while resident of the same household, his spouse and relatives of either.

Grange argues that because Officer Vogt was occupying a Tacoma police car, "furnished for [his] regular use," at the time of the accident his UMC endorsement does not apply. This argument was not made below. Thus, Grange may not raise it before this court. *State v. Davis,* 41 Wn.2d 535, 250 P.2d 548 (1952). *See* RAP 2.5. In any event, we find it unconvincing for two reasons.

First, the court below made no finding regarding whether the police car in which Officer Vogt was sitting when injured was an "automobile furnished for [his] regular use." Its order of summary judgment was based solely on its

holding that Great American provided UMC coverage which was primary. The provisions of the Grange policy and their application to this accident were thus not scrutinized. While Grange makes the argument before this court that the exclusion applies, there is no record or other evidence upon which to base a conclusion that the police car was furnished for Vogt's regular use.

█ Second, this exclusion, like the one considered by this court in *Federated Am. Ins. Co. v. Raynes*, 88 Wn.2d 439, 563 P.2d 815 (1977), is repugnant to the UMC statute. In *Raynes* we held that a clause excluding coverage when the insured is injured while occupying an owned but uninsured vehicle is repugnant to the statute and void. UMC protects insured *persons,* and may not be excluded because the insured is injured in a certain situation. *Federated Am. Ins. Co. v. Raynes, supra* at 444. The court concluded:

> Uninsured motorist coverage is not dependent on the insured occupying a vehicle named in the policy.

*Federated Am. Ins. Co. v. Raynes, supra* at 448.

This rationale is equally applicable to the exclusion here. Officer Vogt is an insured person under the policy issued by Grange. That policy contains a UMC endorsement. Therefore Grange must provide UMC protection to Officer Vogt without regard to the particular situation in which he was injured. The effect of UMC was well stated by the Ohio Common Pleas Court in *Motorists Mut. Ins. Co. v. Bittler,* 14 Ohio Misc. 23, 235 N.E.2d 745 (1968).

> [U]ninsured motorists coverage [is] applicable if, at the time of sustaining injury . . . a named insured, was occupying the Ford described in his policy, or was on foot, or on horseback, or while sitting in his rocking chair on his front porch or while occupying a nonowned automobile furnished for his regular use . . . This so-called uninsured protection is limited personal accident insurance chiefly for the benefit of the named insured.

*Motorists Mut. Ins. Co. v. Bittler, supra* at 32–33. The "vehicle furnished for regular use" exception has been voided in both Ohio and Texas. *Buckeye Union Ins. Co. v.*

*Bradley,* 33 Ohio App. 2d 144, 293 N.E.2d 109 (1972); *Bilbrey v. American Auto. Ins. Co.,* 495 S.W.2d 375 (Tex. Civ. App. 1973). We have found no case in which the exclusion was sustained.

We conclude that the exclusion of UMC from accidents which occur while the insured is occupying a vehicle regularly furnished for his use is repugnant to the statute and void. The record does not disclose the exact amount of uninsured motorist coverage provided by the Grange policy. It must, however, be at least the $15,000 required by the statute, which is equal to the amount of the settlement. Grange is therefore liable for the full amount of the settlement.

■ A proper allocation of liability between these two insurers must be based on their liability to the insured. *See Western Pac. Ins. Co. v. Farmers Ins. Exch.,* 69 Wn.2d 11, 416 P.2d 468 (1966); *Central Sur. & Ins. Corp. v. London & Lancashire Indem. Co. of America,* 181 Wash. 353, 43 P.2d 12 (1935). An insurer who has settled a claim without admitting liability may seek indemnification from an insurer which is liable. *See Western Pac. Ins. Co. v. Farmers Ins. Exch., supra.* We have concluded that Great American does not provide UMC to Officer Vogt, and that Grange's UMC endorsement is applicable to this accident. Great American is therefore entitled to be indemnified by Grange for the $7,500 it contributed to the settlement.

Reversed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.