[No. 49105–4.   En Banc.   June 30, 1983.]

MILLERS CASUALTY INSURANCE COMPANY OF TEXAS, *Appellant,* v. JAMES A. BRIGGS, ET AL, *Defendants,* PEMCO INSURANCE COMPANY, *Respondent.*

*Brooks & Larson, P.S.,* and *James E. Davis,* for appellant.

*Thorner, Almon, Kennedy & Gano, P.S.,* by *David A. Thorner* and *James K. Adams,* for respondent.

*William J. Rush* on behalf of Washington Association of Defense Counsel, amicus curiae for appellant.

DIMMICK, J.—This is a dispute between two insurance companies to determine liability for medical expenses arising out of a single-vehicle accident.[1] Pemco Insurance Company (Pemco) paid the limits of its personal injury protection coverage,[2] $10,000, and initiated this action seeking subrogation from Millers Casualty Insurance Company of Texas (Millers) which has refused to pay any amount under personal injury protection coverage. The dispute revolves around whether Millers is primarily liable under its personal injury protection coverage for medical expenses incurred. The trial court held that Millers was liable and ordered it to reimburse Pemco. We affirm. We further hold that this appeal taken by Millers was frivolous

---

[1]This case was consolidated with Millers Casualty Insurance Company v. Briggs, cause 48731-6, but separate opinions have been written since the issues involved are entirely different.

[2]"Personal Injury Protection" coverage is also referred to as "Automobile Medical Expense" coverage in the policies.

and brought for the purpose of delay only and award terms and compensatory damages to Pemco pursuant to RAP 18.9.

Milo Summers was seriously injured in a single–car accident. Summers was a passenger in an automobile insured by Millers. The Millers policy provided personal injury protection which covered any person occupying the vehicle as a passenger. Summers was also covered by personal injury protection under his father's policy with Pemco. Both policies covered medical expenses incurred within 1 year from the date of the accident and each had a limit of $10,000. Pemco's policy provided that with respect to a nonowned vehicle its coverage would be excess over and above any other collectible personal injury protection insurance. The Pemco policy also provided that Pemco shall be subrogated to its insured's rights of recovery against any person or organization.

Millers initially issued a draft in the sum of $10,000 pursuant to the personal injury protection coverage to Summers' father and mother and the hospital where he was being treated. Thereafter Summers' attorney made a demand on Pemco for benefits under the personal injury protection of that policy. In his request for payment from Pemco, the attorney advised counsel for Pemco that Millers had paid $10,000, the medical bills would exceed that amount, and Pemco must pay under the excess clause of its policy. That same day Summers' counsel requested Millers to reissue its draft and remove the hospital as a payee. The reason for this request was that the hospital had been paid and the money was needed to cover other medical expenses.

Pemco issued its draft for $10,000. Several days later Millers refused to reissue its previous draft and correspondence indicated that Millers would refuse to make any personal injury protection payments on behalf of Summers. Millers pointed to its policy which provided that no person may recover benefits afforded under its personal injury protection coverage from more than one company on a duplicate basis. Millers contended that since Pemco had

already paid the expenses, it was no longer liable.

A series of letters debating the coverage issue were sent and received. In the meantime it was determined that major medical benefits available to Summers through his parents' employment would pay the medical expenses incurred within 1 year of the date of injury except for approximately $10,000, which had been paid by Pemco. After this determination was made, Summers' attorney contacted Pemco advising Pemco's counsel of the circumstances concerning Millers' refusal to pay. Pemco filed a motion for summary judgment seeking subrogation from Millers on the basis that Millers was the primary insurer and that Pemco had merely paid as an excess insurer because it believed Millers had fulfilled its obligation to pay. The court granted the summary judgment.

The first step in our inquiry is to determine the relationship of the two insurers with respect to their responsibility to pay as the proper allocation of liability is based on the insurers' liability to the insured. *Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 719, 575 P.2d 235 (1978). Both the Millers and Pemco policies have "excess" insurance provisions. In essence, these provisions state that the coverage provided is excess insurance over other collectible personal injury protection coverage when a nonowned vehicle is involved. The excess provision in the Millers' policy is inapplicable because the vehicle involved in the accident was owned by Millers' named insured. On the other hand, by the same reasoning Pemco's excess clause is applicable because the vehicle was nonowned with respect to that policy. Thus Pemco is the excess insurer, not Millers.

█ The law is clear that Millers, as the insurer of the involved vehicle, is the primary insurer and is liable to its policy limits without apportionment. *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 416 P.2d 468 (1966); *Safeco Ins. Co. of Am., Inc. v. Pacific Indem. Co.*, 66 Wn.2d 38, 401 P.2d 205 (1965). *See also Herrmann v. Grange Ins. Ass'n*, 33 Wn. App. 734, 736, 657 P.2d 346 (1983). This determination is in accord with the treatises on the subject.

16 G. Couch, *Insurance* § 62:60 (2d ed. 1966); 8A J. Appleman, *Insurance* § 4906 (1981). Courts of other jurisdictions have also held that the company issuing a policy to the owner of the vehicle is the primary insurer and thus is liable to its policy limits. *E.g., Zurich Ins. Co. v. New Amsterdam Cas. Co.,* 117 Ga. App. 426, 160 S.E.2d 603 (1968); *Jensen v. New Amsterdam Ins. Co.,* 65 Ill. App. 2d 407, 213 N.E.2d 141 (1965); *Travelers Indem. Co. v. Chappell,* 246 So. 2d 498 (Miss. 1971); 7A Am. Jur. 2d *Automobile Insurance* § 434 (2d ed. 1980); Annot., *Apportionment of Liability Between Automobile Liability Insurers Where One of the Policies Has an "Excess Insurance" Clause and the Other a "Proportionate" or "Prorata" Clause,* 76 A.L.R.2d 502 (1961). Millers has not cited any authority to the contrary.

It is equally well established that the liability of the excess insurer does not arise until after the limits of the coverage under the primary policy have been exceeded. 16 G. Couch § 62:60; 8A J. Appleman § 4909. Accordingly, Millers, as the primary insurer, is liable to pay $10,000, its policy limits, to Summers; and Pemco, as excess insurer, is liable only to the extent the medical expenses exceed $10,000. The medical expenses did not exceed $10,000; yet Pemco paid on the assumption that the expenses did exceed the limits of the Millers' policy.

By the terms of its policy and under general principles, Pemco is subrogated to the rights of Summers to collect on Millers' primary obligation to pay the $10,000. It has long been established in this state and elsewhere that "when an excess insurer is required to pay its insured, it is subrogated to his claim against the insurer of the wrongdoer [the primary insurer] . . ." 16 G. Couch § 62:53. *Central Sur. & Ins. Corp. v. London & Lancashire Indem. Co. of Am.,* 181 Wash. 353, 43 P.2d 12 (1935). *See also* 8A J. Appleman § 4922. Allowing subrogation in this situation is warranted under the general law regarding subrogation. The right to subrogation exists when a party, not a volunteer, pays another's obligation for which the subrogee has no primary

liability in order to protect such subrogee's own rights and interests. The right of subrogation is based on equity and will be protected only when justice so requires. *Livingston v. Shelton*, 85 Wn.2d 615, 618–19, 537 P.2d 774 (1975). Pemco had no primary liability under any reasoning; and Millers does not contend in this appeal that Pemco was a volunteer when it paid upon Summers' demand. Further, equity demands that Pemco be able to collect the $10,000 from Millers. Only through manipulation of an unfortunate set of circumstances was Millers able to renege on its responsibility. Denying subrogation here could encourage primary insureds to hold out making payments and hope an excess insurer pays first; such a result is obviously undesirable.

Millers attempts to cloud the issue by offering an untenable argument in response. Millers first argues that we disregard the distinction between a primary and excess insurer. It then argues that because only $10,000 was necessary to compensate Summers for medical expenses incurred in the first year after the accident and this sum was paid, Millers is not responsible to Summers and therefore Pemco is not entitled to subrogation. It argues that Pemco in paying Summers satisfied its own obligation and not an obligation owed by Millers.

This circuitous argument ignores the facts presented here and the responsibilities and relationships of the two insurers. Millers was primarily liable for the payment of this sum. Pemco was secondarily liable as the excess insurer, and it paid only as an excess insurer after being advised that Millers had already paid and the expenses exceeded Millers' policy limit. The issue is not which company paid but which company was responsible for payment. Since Millers was primarily liable, Summers was entitled to payment from Millers; and Pemco is entitled to recover the money it paid to Summers.

Under all the authorities, which are very clear on this subject, Pemco is entitled to recover $10,000 from Millers. Accordingly, we affirm the trial court's judgment.

█ Pemco seeks $2,183.90 in terms and compensatory damages pursuant to RAP 18.9. RAP 18.9 allows this court to order a party to pay terms and compensatory damages if an appeal is deemed to have been brought only for the purpose of delay and the other party is harmed by such delay. The Court of Appeals recently awarded terms under this rule and held:

> In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Streater v. White,* 26 Wn. App. 430, 434–35, 613 P.2d 187 (1980).

With these considerations in mind we hold that this appeal, brought by Millers, presented no debatable issues. There was no merit whatsoever in Millers' position. The authorities, within and without this state, clearly dictated that the trial court be affirmed. Therefore, we conclude that Pemco is entitled to receive $2,183.90 in terms and compensatory damages.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.