Argued and submitted September 3, 1993; resubmitted In Banc April 6, reversed
June 22, petition for review denied August 23, 1994 (319 Or 625)

# FARMERS INSURANCE COMPANY
# OF OREGON,
## *Respondent,*

*v.*

# SNAPPY CAR RENTAL, INC.,
## *Appellant.*

## (9201-00214; CA A78550)

876 P2d 833

Michael A. Lehner argued the cause for appellant. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

William J. Martin argued the cause for respondent. With him on the brief was Cavanagh & Zipse.

EDMONDS, J.

Rossman, J., concurring.

## EDMONDS, J.

In this action for declaratory relief, defendant appeals from the trial court's ruling that plaintiff is entitled to contribution from defendant. Defendant argues that the trial court erred when it held that it was an insurer of Cyrene Curtin and that, therefore, plaintiff was entitled to contribution for damages that plaintiff had paid to individuals who had been injured by Curtin. The trial court ruled that defendant's status as an insurer of Curtin arose under the provisions of the Financial Responsibility Law (FRL). ORS 806.010 *et seq*. We reverse.

The parties stipulated to these facts. Plaintiff issued a motor vehicle liability insurance policy to Curtin that provided coverage to her while she was driving a rental car. Defendant is in the business of renting cars that it owns to the public. In 1990, Curtin rented a vehicle from defendant. Curtin checked a box on the rental agreement indicating that she understood that the car was "*not covered* for bodily injury or property damage insurance by [defendant] and [that] coverage *shall* be provided by renter or renter's existing insurance." (Emphasis in original.) Also, she wrote plaintiff's policy number on the agreement. Thereafter, while driving defendant's car, she collided with another car. The occupants of that car sought recovery for their injuries from Curtin. Plaintiff tendered the defense of the claims against Curtin to defendant, but it rejected the tender. Plaintiff subsequently settled those claims on behalf of Curtin for $17,500. The parties agree that the settlement amount was reasonable.

In this action, plaintiff seeks a declaration that defendant is primarily obligated to indemnify Curtin and seeks reimbursement of the $17,500, as well as the costs of defending the claims. Defendant is a self-insurer under ORS 806.130. Plaintiff's action is based on the rule that an insurer can compel contribution from another insurer for whose benefit monies are paid. *See Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 136, 346 P2d 643 (1959). It relies on the terms of its policy with Curtin, which provides:

"If there is other applicable Auto Liability Insurance on any other policy that applies to the loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits. * * *

Any insurance we provide for a vehicle you do now own shall be excess over any other collectible insurance."

Based on these policy provisions, plaintiff argues:

"The Oregon legislature has expressly provided that a self-insurer is required to provide the same coverage on its own automobiles that an insurer would be obligated to pay under a motor vehicle liability insurance policy. A motor vehicle liability policy must include coverage for all persons who, with the consent of the named insured, use the motor vehicles insured under the policy. Therefore, [defendant] in its self-insured capacity, provided 'other collectible insurance' to Cyrene Curtain [sic] when she was driving defendant's vehicle * * *."

■ The premise of plaintiff's argument is that ORS 806.080(1)(b) applies to self-insurers. That statute provides:

"A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:

"* * * * *

"(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. *The policy must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured under the policy, except for any person specifically excluded from coverage under ORS 742.450.*" (Emphasis supplied.)

Plaintiff argues that when a self-insurer agrees to pay "the same amounts with respect to an accident * * * that an insurer would be obligated to pay under a motor vehicle liability policy" under ORS 806.130(3), it provides the same "scope of coverage" required in an insurance policy under 806.080(1)(b). That argument is not supported by the language of the statutes.

The FRL generally is designed to ensure that

"motor vehicle drivers can respond in damages for liability [and] above all, [to] seek to insure that motor vehicle accident victims are compensated for injuries received.

"Oregon requires that motor vehicle *drivers* either obtain motor vehicle liability insurance or otherwise comply with

financial responsibility requirements. ORS 806.010(1) (*former* 486.075 (1981)). The phrase 'financial responsibility requirements' is defined as 'the ability to respond in damages for liability' for accidents arising from the ownership, operation, or maintenance of a motor vehicle." *State Farm Fire and Casualty Co. v. Jones*, 306 Or 415, 418, 759 P2d 271 (1988). (Emphasis added.)

ORS 806.010 makes it unlawful for any *person* to operate a motor vehicle in this state on any highway or premises open to the public unless the operator is insured by a motor vehicle liability insurance policy that meets the requirements of ORS 806.080, or unless the owner of the car or the operator has provided proof of compliance with the FRL to the Department of Transportation.

ORS 806.060 provides for methods of compliance with the FRL:

"A person who is required to comply with the financial responsibility requirements of this state must be able to respond in damages, in amounts required under this section, for liability on account of accidents arising out of the ownership, operation, maintenance or use of motor vehicles and must establish that ability by one of the methods required by this section. All of the following apply to the financial responsibility requirements of this state:

"(1) To meet the financial responsibility requirements, a person must be able to respond in damages in amounts not less than those established under the payment schedule under ORS 806.070.

"(2) A person may only comply with the financial responsibility requirements of this state by establishing the required ability to respond in damages in one of the following ways:

"(a) Obtaining a motor vehicle liability policy meeting the requirements under ORS 806.080 that will provide at least minimum limits necessary to pay amounts established under the payment schedule under ORS 806.070.

"(b) Maintaining a bond of the type described in ORS 806.090 of at least the value of $60,000.

"(c) Making a deposit under ORS 806.120 of at least $60,000 in cash or appropriate securities.

"(d) Becoming self-insured as provided under ORS 806.130."

■ Thus, a person may comply with the requirements of the FRL by buying an automobile insurance policy from an insurer, or by posting a bond, or by making a deposit of cash or securities, or by becoming a self-insurer. *Viking Ins. Co. v. Petersen*, 308 Or 616, 621, 784 P2d 437 (1989). Defendant has elected to be a self-insurer under ORS 806.130, which defines its responsibilities.[1] That statute obligates the self-insurer to pay the same minimum amounts as an insurer of others is required to pay. *See* ORS 806.020. ORS 806.130 makes no reference to ORS 806.080. On the other hand, if a person elects to comply with the FRL by buying an automobile insurance policy from an insurer, then the insurer's policy must meet the requirements of ORS 806.080. *See also* ORS 742.502; ORS 742.540. Significantly, ORS 806.080 makes no reference to ORS 806.130, nor does it impose obligations on owners of vehicles who also are self-insurers. It is referable only to insurers who issue insurance policies insuring others against risk in consideration of premiums. In interpreting a statute, our mandate is to declare what is said in a statute, not to add what may have been omitted. ORS 174.010. We conclude that, as a self-insurer, defendant had no statutory obligation under ORS 806.080 to insure Curtin when it rented its vehicle to her.

■ Moreover, defendant offered insurance coverage to Curtin, which she rejected. In the absence of a statutory obligation to insure, the only way that defendant could have been responsible for Curtin's liability would have been under an insurance agreement with Curtin. There was none.[2] Therefore, there was not "other collectible insurance" within

---

[1] ORS 806.130 provides, in part:

"To qualify as a self-insurer for purposes of financial responsibility requirements under ORS 806.060, a person must do all of the following:

"* * * * *

"(3) Agree to pay the same amounts with respect to an accident occurring while the certificate is in force that an insurer would be obligated to pay under a motor vehicle liability insurance policy, including uninsured motorist coverage and liability coverage to at least the limits specified in ORS 806.070."

[2] Had she agreed to be insured by defendant, arguably, defendant would have been required to comply with ORS 806.080 inasmuch as it would be insuring others. However, we need not decide that question in this case. Moreover, neither party contends that Curtin was not a financially responsible person under the FRL or that plaintiff's policy did not meet the requirements of the law at the time that the car was rented to her.

the meaning of plaintiff's policy, and any right that plaintiff could have had arising out of the rule that one insurer can compel contribution from another insurer for whose benefit monies are paid does not exist.

Reversed.

**ROSSMAN, J.,** concurring.

The majority and I are heading toward the same destination; I take a different route to reach it, however. I agree with the majority that the requirement in ORS 806.130(3) that the self-insurer pay the "same amounts" that an insurer would be obligated to pay did not make defendant *Curtin's* insurer; *i.e.*, it did not make defendant the insurer of the permissive users of its vehicles. Additionally, Curtin chose not to purchase insurance from defendant. Although defendant had no obligation to provide coverage for Curtin, it was obligated under the financial responsibility law, and for the protection of *the public*, to respond in damages for the negligent use of its vehicles. That leads to the question that the majority does not answer, and that I believe must be answered to fully resolve this case: What is the extent of the self-insurer's obligation and does that obligation constitute "other collectible insurance" with respect to plaintiff's policy issued to Curtin?

In the jurisdictions that have considered the question, the weight of authority is that self-insurance for the purpose of satisfying the financial responsibility laws is not "other collectible insurance" within the meaning of other insurance clauses in liability insurance policies. *Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 286 Ala 231, 238 So 2d 730 (1970); *Southeast Title & Ins. Co. v. Collins*, 226 So 2d 247 (Fla Dist Ct App 1969); *American Family Mut. Co. v. Missouri Power & Light Co.*, 517 SW2d 110 (Mo 1974); *United Nat. Ins. Co. v. Philadelphia Gas Works, etc.*, 221 Pa Super 161, 289 A2d 179 (1972); *Hartford Casualty Ins. Co. v. Budget Rent-A-Car Systems, Inc.*, 796 SE 2d 763 (Tex App 1990); *Allstate Ins. Co. v. Zellars*, 462 SW2d 550 (Tex 1970); *Home Indem Co. v. Humble Oil & Refining Co.*, 314 SW2d 861 (Tex Civ App 1958). A minority of jurisdictions have held that the self-insured has the functional equivalent of a policy insuring itself. *White v. Howard*, 573 A2d 513 (NJ Super AD

1990); *Southern Home Ins. Co. v. Burdette's Leasing Service, Inc.*, 268 SC 472, 234 SE2d 870 (1977). The determination as to what the legislature might have intended with respect to this question must be based on the text and context of our statutes.

From a definitional standpoint, self-insurance is not the equivalent of insurance. ORS 731.102 defines "insurance" as

> "a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies."

Unlike insurance, a certificate of self-insurance does not provide indemnity to a named insured; rather, it protects *the public* against the uninsured or underinsured driver's negligent use of the certificate holder's vehicles by proof of an ability to pay damages. ORS 806.130(2). When the negligent driver who uses a certificate holder's vehicle is uninsured, or when damages are in excess of the limits of the driver's policy, the self-insurer must be prepared to respond in damages to the person injured in the same amounts that an insurer would be obligated to pay on behalf of its insured under a motor vehicle liability insurance policy. The Financial Responsibility Law does not impose on the self-insurer every obligation as to the users of its vehicles that might be undertaken by an insurer in its agreement to indemnify its insured. As the majority correctly states, the statutes do not make the self-insured party primarily responsible for the negligence of a permissive user. For all these reasons, I conclude that the self-insurer's obligation under the Financial Responsibility Law does not require it to make contribution to a primarily responsible insurer.

De Muniz and Leeson, JJ., join in this concurrence.