26 P.3d 304 (2001)
106 Wash.App. 888
Rod J. RIGOS, Appellant,
v.
CHENEY SCHOOL DISTRICT NO. 360, Respondent.
No. 19218-1-III.
Court of Appeals of Washington, Division 3, Panel One.
July 3, 2001.
*305 William J. Powell, Powell, Kuznetz & Parker, Spokane, for Appellant.
Lucinda S. Whaley, Winston & Cashatt, Spokane, for Respondent.
KATO, J.
Rod J. Rigos sought back pay from Cheney School District No. 360 (District). He claimed that both he and the District were mistaken about his proper placement on the salary schedule and that his yearly contracts should accordingly be reformed. The court disagreed and summarily dismissed his complaint. We reverse.
In 1969, Mr. Rigos earned a Bachelor of Arts in Business Administration from Central Washington University (Central). In 1979, he received a Bachelor of Arts in Education from Eastern Washington University (Eastern). In 1986, he obtained a Masters of Science and Mathematics in Computer Technology from Eastern.
In 1980, Mr. Rigos began working as a teacher for the District. His salary was determined pursuant to a local schedule that took two factors into consideration: educational credits and years of experience. This schedule only counted college credits from the time a teacher obtained a teaching certificate. To be considered, all credits earned had to be documented with official transcripts.
When he was hired, Mr. Rigos had an educational level of "BA plus 30 credits." Clerk's Papers (CP) at 194. None of his credits from Central were counted because they were earned before he got his teaching certificate. Because he was taking courses to obtain a master's degree, Mr. Rigos submitted official transcripts each year and moved up the scale until 1986, when he obtained his master's degree and was placed at the level of "MA plus 0." CP at 195. He remained at this level until 1996. Each year, Mr. Rigos signed an employment contract setting forth his salary under the local schedule.
During this time, the District also submitted to the Superintendent of Public Instruction, Form S-275, which contains data concerning a teacher's past experience, college degrees, and college credits. Form S-275 had different requirements for counting college credits. It counted credits from the date the first degree of highest level was earned. Therefore, for purposes of Form S-275, the credits Mr. Rigos had earned since his 1969 degree at Central should have been reported. But the District never reported Mr. Rigos as having earned a degree at Central.
Because of the differences between local salary schedules and Form S-275 reporting requirements, school districts had the option of adopting a statewide salary schedule known as the "LEAP formula." CP at 217. By adopting the LEAP schedule, a district had to calculate salary placement using Form S-275 rules.
The District adopted the LEAP schedule for the 1990-1991 academic year. Mr. Rigos was placed at the level of MA plus 0 and remained at that level. The District did not count Mr. Rigos's Central degree for placement on the schedule.
In 1995, the Washington State Auditor's Office conducted an audit of the District for the 1993-1994 school year. It found that the *306 District did not have accurate documentation as required under WAC 392-121-280 to justify certain employees' placement on the LEAP schedule. Between 1995 and 1997, the District reviewed its files to verify that each teacher was properly placed on the LEAP schedule. This review found discrepancies with 11 teachers, including Mr. Rigos.
On June 4, 1997, the District sent Mr. Rigos a letter noting a discrepancy because of a reference to a degree from Central on his Eastern transcript. There was, however, no official transcript from Central in his file. On June 9, the District told Mr. Rigos that if he submitted an official transcript from Central documenting his 1969 degree, his salary for the 1997-1998 school year would be increased on the LEAP schedule. Once it received a transcript, the District would count all of his credits earned since his 1969 degree and he would be placed at the highest educational level on the salary schedule.
On June 23, 1997, Mr. Rigos filed a grievance for back pay with the union. He sought back pay for each year he was underpaid, starting with 1990-1991, the first year the District used the LEAP schedule. This grievance was denied on July 31, 1997.
On August 8, 1997, he submitted his official transcript from Central. The District then increased Mr. Rigos's placement on the schedule for the 1997-1998 school year.
On May 27, 1998, Mr. Rigos filed this action seeking declaratory relief and a judgment for back pay from 1990-1991 through 1996-1997. He claimed there was a mutual mistake that nullified his contracts. The District moved for summary judgment and argued that the only reason it did not count Mr. Rigos's Central degree was because it did not have the required documentation to do so. The court granted summary judgment dismissal. This appeal follows.
Summary judgment is appropriate "`if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 278, 937 P.2d 1082 (1997) (quoting CR 56(c)). "A material fact is one upon which the outcome of the litigation depends." Tran v. State Farm Fire & Cas. Co., 136 Wash.2d 214, 223, 961 P.2d 358 (1998) (citing Ruff v. King County, 125 Wash.2d 697, 703, 887 P.2d 886 (1995)). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. Huff v. Budbill, 141 Wash.2d 1, 7, 1 P.3d 1138 (2000). When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. Greater Harbor, 132 Wash.2d at 278, 937 P.2d 1082.
Based on the doctrine of mutual mistake, Mr. Rigos sought to reform his employment contracts with the District starting with the 1990-1991 school year. A contract may be rescinded when both parties are mistaken about a basic assumption underlying the agreement. In re Marriage of Schweitzer, 132 Wash.2d 318, 328, 937 P.2d 1062 (1997). "`A mutual mistake occurs "when the parties, although sharing an identical intent when they formed a written document, did not express that intent in the document."'" Lehrer v. Dep't of Soc. & Health Servs., 101 Wash.App. 509, 514, 5 P.3d 722 (quoting Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co., 139 Wash.2d 824, 832, 991 P.2d 1126 (2000)), review denied, 142 Wash.2d 1014, 16 P.3d 1263 (2000). The person asserting mutual mistake must prove by "`clear, cogent, and convincing evidence'" that both parties to the contract were mistaken. Schweitzer, 132 Wash.2d at 328, 937 P.2d 1062 (quoting Bergstrom v. Olson, 39 Wash.2d 536, 543, 236 P.2d 1052 (1951)).
Mr. Rigos claims that he and the District were mutually mistaken as to how to count his college credits for placement on the LEAP salary schedule. Under this schedule, an employee is placed based upon his or her certificated years of experience, highest degree level, and total eligible credits. WAC 392-121-270. If an employee holds more than one degree of the same level, additional credits must be counted after the first degree. WAC 392-121-270(1). Under this system, Mr. Rigos was thus entitled to have his 1969 degree from Central used in determining his eligible credits. There is no dispute *307 that until the 1997-1998 school year, his 1969 degree was not used to determine his placement on this salary schedule.
The District has never reported Mr. Rigos's 1969 Central degree on Form S-275. According to Mr. Rigos, this establishes, or at least implies, that the District was mistaken about how to count this degree for Form S-275 purposes and the LEAP schedule. He also claims that he was mistaken about how to count this degree, so a mutual mistake exists. The District counters that it was not mistaken about the reporting requirements, but rather failed to report the 1969 degree because it lacked official documentation of that degree.
Both Form S-275 and the LEAP schedule have a documentation requirement:
School districts shall have documentation on file and available for review which substantiates each basic education certificated instructional employee's placement on LEAP salary allocation documents. The minimum requirements are as follows:
(1) Districts shall document the date of awarding or conferring of the highest degree including the date upon which the degree was awarded or conferred as recorded on the diploma or transcript from the registrar of the regionally accredited institution of higher education.
WAC 392-121-280. It is undisputed that until August 8, 1997, the District did not have a transcript from Central documenting Mr. Rigos's 1969 degree. Without this documentation, the District was not permitted to report this degree on Form S-275 or consider it for LEAP salary placement. But this does not necessarily establish that the District made no mistake.
Mr. Rigos's official transcript from Eastern has a large notation in a section labeled "Transfer Credits & Degrees" that states: "Central Washington University: B.A. Degree (1969)." CP at 118. The District had his Eastern transcript containing this information. Yet, the District did not ask Mr. Rigos about this degree or ask him to provide a transcript. With no transcript, the District was unable to report Mr. Rigos at the highest level possible on Form S-275. Since this could have cost the District money from the State, see WAC 392-121-003, it is unlikely that it would knowingly underreport a teacher's educational level, given the connection between that level and the funds received by the State. From these facts, a reasonable person could infer that the District was mistaken about the reporting requirements. If the District were mistaken about the reporting requirements as applied to Mr. Rigos, it could also be reasonably inferred that it was mistaken as to how to place Mr. Rigos on the LEAP salary schedule. Viewed in a light most favorable to the nonmoving party, these facts are sufficient to raise a question of fact regarding whether the District made a mistake when it entered into each contract with Mr. Rigos.
Mr. Rigos also claims he made a mistake when he signed each contract because he did not know that the LEAP salary schedule counted his Central degree differently than the local schedule. In 1988, the Cheney Education Association (CEA), the union representing teachers, negotiated a collective bargaining agreement in which the District and the teachers agreed to adopt the LEAP salary schedule for the 1990-1991 school year. The union distributed several bulletins and newsletters to teachers informing them of the new salary schedule and advising them to review their records. But none of these bulletins specifically explained how the salary schedule changes would apply to individuals with two bachelor's degrees.
Mr. Rigos was unaware that his 1969 Central degree affected his salary placement under the LEAP schedule. When the LEAP schedule went into effect in 1990-1991, he had not earned any additional credits or degrees beyond his 1986 master's. Since he had already provided the District with official transcripts of those credits and degrees, he had nothing new to document for salary purposes. None of the information provided by the union suggested that his 1969 degree would count under the LEAP schedule. Because he had earned a master's in 1986, he mistakenly believed that the District had all the documentation required. For purposes of summary judgment, these facts show that Mr. Rigos was mistaken as to how his Central *308 degree should be counted for salary purposes.
Mr. Rigos and the District entered into successive employment contracts starting in 1980. In 1990, the salary schedule was changed. Mr. Rigos was mistaken regarding how those changes affected him. Whether the District was also mistaken is a question of fact requiring resolution at trial. The court erred by granting summary judgment.
Reversed.
WE CONCUR: BROWN, Acting C.J., and SWEENEY, J.