[No. 19543-1-III.   Division Three.   December 11, 2001.]

NEW HAMPSHIRE INDEMNITY COMPANY, INC., *Respondent*, v. BUDGET RENT-A-CAR SYSTEMS, INC., *Appellant*.

*K.C. Webster* (of *Phillips & Webster, P.L.L.C.*), for appellant.

*Meriwether D. Williams* and *Patrick J. Cronin* (of *Winston & Cashatt, P.S.*), for respondent.

KATO, J. — Budget Rent-A-Car Systems, Inc., rented a car to Thomas Bentley, who declined optional liability insurance because his policy with New Hampshire Indemnity Co. provided coverage for nonowned vehicles. Mr. Bentley was involved in a car accident. Claiming it was not primarily liable for the damages, New Hampshire brought a declaratory judgment action against Budget, Mr. Bentley, and the injured parties. The court granted summary judgment in favor of New Hampshire. We affirm.

On April 4, 1998, Mr. Bentley rented a car from Budget in Spokane. The rental agreement included a statement that Budget provided liability protection for bodily injury and property damage caused by the negligent use or operation of the vehicle. This protection, however, was not to apply until after the exhaustion of all automobile liability insurance and/or other protection available to the driver. Mr. Bentley did not purchase the optional liability insurance because he had coverage through his policy with New Hampshire. On April 7, Mr. Bentley was involved in a car accident with the Reillys, who submitted claims to both

Budget and New Hampshire seeking compensation for their injuries.

On February 8, 2000, New Hampshire filed a complaint for declaratory judgment against Budget, Mr. Bentley, and the Reillys. It sought a judgment declaring that Budget's rental agreement with Mr. Bentley was a contract providing primary insurance protection. New Hampshire also sought attorney fees and costs. Budget answered by claiming New Hampshire was the primary insurer. Budget also filed a cross claim against Mr. Bentley for a declaration that if it were required to provide primary liability protection, it was entitled to indemnification from him under the contract.

New Hampshire and Budget filed cross motions for summary judgment with each claiming that the other provided primary insurance coverage. New Hampshire argued that Budget was the primary insurer because it owned the car. On the other hand, Budget asserted that New Hampshire was the primary insurer because the driver, not the owner, was obligated to provide primary insurance.

The court determined Budget provided primary insurance coverage. Its July 14, 2000 order stated that Budget's rental agreement provided primary coverage; New Hampshire's policy was excess only; and Budget was required to indemnify Mr. Bentley.[1] On August 16, 2000, the court entered an order awarding New Hampshire $12,309.50 in attorney fees.

On September 1, 2000, Budget filed a notice of appeal that sought review of both the order granting summary judgment and the order awarding attorney fees. New Hampshire moved to dismiss the appeal as untimely, be-

---

[1] There is no merit to Budget's contention that its cross claim against Mr. Bentley remains unresolved and this case is therefore subject only to discretionary review. The superior court's order granting summary judgment expressly provided: "Defendant Budget is obligated to indemnify Defendant Bentley for any and all claims, lawsuits and judgments and costs of defense brought by or obtained on behalf of Defendants Reilly . . . ." Clerk's Papers (CP) at 97. This language unequivocally rejected Budget's cross claim, which asserted Mr. Bentley was required to indemnify Budget.

cause the notice was filed more than 30 days after the July 14 order granting summary judgment. This court's commissioner denied the motion. New Hampshire's motion to modify was also denied with leave to raise the timeliness issue in its appellate brief. The matter was set before this panel.[2]

Summary judgment is appropriate " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Rigos v. Cheney Sch. Dist. No. 360*, 106 Wn. App. 888, 892, 26 P.3d 304 (2001) (quoting *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 278, 937 P.2d 1082 (1997)). When reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. *Id.*

Budget first claims the court erred by determining that chapter 46.29 RCW, the financial responsibility act (FRA), applied. It contends that chapter 46.30 RCW, the mandatory liability insurance act (MLIA), is the controlling statutory scheme.

■ The FRA requires a driver to provide proof of insurance or other financial security after an accident has occurred. *Mendoza v. Rivera-Chavez*, 140 Wn.2d 659, 663, 999 P.2d 29 (2000) (citing RCW 46.29.060-.240). Failure to provide such proof will cause the driver's license to be suspended. *Id.* The act protects the public from motorists who are unable to compensate the victims of accidents. *Id.* at 664.

The FRA does not require that all drivers meet the statutory requirements. *Royse v. Boldt*, 80 Wn.2d 44, 46, 491 P.2d 644 (1971). It requires an individual to prove only that he is financially able to compensate those he may

---

[2] As permitted, New Hampshire has raised the timeliness issue in its brief on appeal. This panel concurs with the commissioner that under *Wlasiuk v. Whirlpool Corp.*, 76 Wn. App. 250, 884 P.2d 13 (1994), the notice of appeal was timely. Although we might take issue with the specific holding in that case, Budget's reliance on it was reasonable.

injure through the use of his vehicle after he is involved in an automobile accident resulting in bodily injury or death of a person or property damage of $300 or more. *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 206, 643 P.2d 441 (1982) (citing RCW 46.29.080). If a qualifying accident occurs, the two-pronged approach of the FRA comes into play. *Id.*

> First, if the injured or damaged person(s) submits information indicating the extent of injuries or damage within 180 days of the accident, the other party must demonstrate financial responsibility to the injured or damaged person(s). RCW 46.29.070(2). Unless the individual already carries liability insurance coverage or can demonstrate financial responsibility in some other manner, *see* RCW 46.29.080, he must post an
>
>> amount of security . . . sufficient . . . to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against each driver or owner.
>
> RCW 46.29.070(1).
>
> Second, the financial responsibility act requires the individual to demonstrate "financial responsibility for the future." This term is defined by the act as follows:
>
>> Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of said proof, arising out of the ownership, maintenance, or use of a vehicle . . . .
>
> RCW 46.29.260.

*Id.* at 206-07.

At the time of the accident here, there was no indication that Budget had a prior incident triggering the FRA. Budget is required to establish its financial ability to cover the potential damages from this accident as well as to show financial responsibility in the future by filing a certificate of insurance. *Mut. of Enumclaw*, 97 Wn.2d at 207. Under RCW 46.29.490(2)(b), that policy must include coverage for permissive users of the insured vehicle. For purposes of this case, the provisions of the FRA are inapplicable.

■ Budget asserts instead that the MLIA applies. The

MLIA requires all individuals who drive vehicles registered in Washington to satisfy specific financial responsibility requirements. *Mendoza*, 140 Wn.2d at 665. This act refers only to drivers of motor vehicles and makes no mention of registered owners. *See* ch. 46.30 RCW. There is no provision in the MLIA requiring insurance coverage to permissive users.

Mr. Bentley complied with the MLIA because he had insurance coverage through New Hampshire. The act is silent as to rental cars and excess coverage provisions. It is also inapplicable.

Neither the FRA nor the MLIA apply here. To the extent it relied on either statutory scheme or specifically RCW 46.29.490 in reaching its conclusions, the court erred.

■ Budget contends the court erroneously determined that it was primarily liable for the damages arising from the car accident. As part of its rental agreement, Budget provides liability protection for third-party claims in specified situations. That portion of the rental agreement or contract states:

> BUDGET PROVIDES AUTOMOBILE LIABILITY PROTECTION FOR BODILY INJURY (INCLUDING DEATH) AND PROPERTY DAMAGE CAUSED BY NEGLIGENT USE OR OPERATION OF THE VEHICLE LIMITED AS FOLLOWS:
>
> A. BUDGET'S LIABILITY PROTECTION DOES NOT APPLY until after exhaustion of all automobile liability insurance and/or other protection available to the driver of the Vehicle (personal automobile insurance, employer's insurance and/or any other protection or indemnification whether primary, excess or contingent), and then Budget's protection applies only to the extent it is needed to meet, on a cumulative basis with all such liability insurance and/or protection available to the driver, the minimum financial responsibility limits required by applicable law.

CP at 12.

Mr. Bentley had a private insurance policy through New Hampshire that included coverage for damages incurred

while driving a nonowned automobile. The coverage, however, was limited:

> If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.

CP at 18.

Budget claims that New Hampshire is the primary insurer because (1) Mr. Bentley agreed that Budget would not be primarily liable since he had private insurance; (2) as a self-insured entity, Budget's contingent liability protection is not "other insurance" under New Hampshire's excess coverage provision; and (3) Budget's policy contains a super escape clause which supersedes New Hampshire's excess coverage clause.

Under the rental contract, Mr. Bentley agreed that Budget would not provide liability protection to him unless he had no such protection through another source. But this does not address which insurance policy is primary. It is undisputed that both Budget and New Hampshire offered some type of liability protection to Mr. Bentley for the car accident. There is also no dispute that both agreements contained limitations. At issue is how to reconcile those limitations.

Washington courts have not addressed this precise question. But cases have dealt with similar situations and they are instructive. In 1983, our Supreme Court was asked to resolve a dispute between two insurance companies regarding liability for medical expenses arising from a single car accident. *Millers Cas. Ins. Co. of Tex. v. Briggs*, 100 Wn.2d 9, 665 P.2d 887 (1983). Both policies contained an "excess" insurance provision. *Id.* at 12. The court concluded the insurer of the involved vehicle was the primary insurer and

was liable to its policy limits without apportionment. *Id.* In 1986, Division Three of this Court, followed this rule. *Rasmussen v. Allstate Ins. Co.*, 45 Wn. App. 635, 726 P.2d 1251 (1986), *review denied*, 107 Wn.2d 1031 (1987).

Budget argues these cases are inapposite because they did not involve car rental agencies operating as self-insurers. In two other cases, however, the holdings indicated that, while a rental company may be self-insured, the rental agreements were stand-alone policies of motor vehicle insurance because the self-insurers issued a liability policy to the customers, not because the companies were self-insured. *Van Vonno v. Hertz Corp.*, 120 Wn.2d 416, 425, 841 P.2d 1244 (1992) (interpreting similar Oregon uninsured motorist statute); *Corley v. Hertz Corp.*, 76 Wn. App. 687, 690, 887 P.2d 401 (1994), *review denied*, 128 Wn.2d 1007 (1996). Budget therefore issued an insurance policy to Mr. Bentley. Because it owned the vehicle, that policy is primary.

Budget urges us to adopt the reasoning of several other jurisdictions that have determined a driver's automobile policy is primary and a car rental company's insurance is secondary. *See Mercury Ins. Co. v. Enter. Rent-A-Car Co. of L.A.*, 80 Cal. App. 4th 41, 48, 95 Cal. Rptr. 2d 222, 227 (2000); *Hertz Corp. v. Fed. Ins. Co.*, 245 Conn. 374, 384, 713 A.2d 820, 825 (1998); *A. Atlanta AutoSave, Inc. v. Generali-U.S. Branch*, 230 Ga. App. 887, 889, 498 S.E.2d 278, 281 (1998), *aff'd*, 270 Ga. 757, 514 S.E.2d 651 (1999); *Alamo Rent-A-Car, Inc. v. State Farm Mut. Auto. Ins. Co.*, 114 Nev. 154, 160, 953 P.2d 1074, 1077 (1998); *Champlain Cas. Co. v. Agency Rent-A Car, Inc.*, 168 Vt. 91, 100-01, 716 A.2d 810, 816 (1998). We decline to do so and continue to adhere to the Washington rule that a rental car company, as owner of the vehicle involved in an accident, must provide primary insurance coverage consistent with the terms contained in the rental contract.

Budget contends that it is not primarily liable because it is self-insured. It argues that a certificate of self-insurance is not the same as an insurance policy, so its protections do not qualify as "other insurance" for the purposes of New

Hampshire's excess coverage clause. *See Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 852 P.2d 1078 (1993).[3] In *Kyrkos*, the court held that a self-insurance plan cannot be considered a policy for the purposes of underinsured motorist coverage because self-insurance did not involve the type of third-party relationship that insurance policies contemplate. *Id.* at 674-75. Division One of this Court followed suit in *Cann v. King County*, 86 Wn. App. 162, 164, 937 P.2d 610, *review denied*, 133 Wn.2d 1007 (1997).

But *Kyrkos* does not change the holding in *Van Vonno* and *Corley* that rental agreements are stand-alone policies of motor vehicle insurance because the self-insurers issued a liability policy to their customers. *Van Vonno*, 120 Wn.2d at 425; *Corley*, 76 Wn. App. at 690; *see also Cann*, 86 Wn. App. at 164. Budget's rental contract was an insurance policy and qualifies as "other insurance" for purposes of New Hampshire's excess coverage clause.

Budget further argues it is not primarily liable because its "other insurance" clause is a "super escape" clause, while New Hampshire's "other insurance" clause is merely an "excess coverage" clause. It asserts that a super escape clause prevails over an excess coverage clause.

■■ A super escape clause provides that there will be no coverage under the policy if there is other insurance available, even if that other insurance specifically states that it will be excess when other insurance is available. *Titan Indem. Co. v. Am. Justice Ins. Reciprocal*, 758 So. 2d 1037, 1040-41 (Miss. Ct. App. 2000); *see also* 8A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE, § 4906, at 349-50 (rev. ed. 1981) (defining super escape clauses). An escape clause is transformed into a super escape clause by specifically referring to "other insurance whether 'primary, excess or

---

[3] Budget also relies on cases from other jurisdictions to support its claim. *See Hearty v. Harris*, 574 So. 2d 1234 (La. 1991); *Cordova v. Wolfel*, 120 N.M. 557, 903 P.2d 1390 (1995); *see also Farmers Ins. Co. v. Snappy Car Rental, Inc.*, 128 Or. App. 516, 876 P.2d 833, *review denied*, 319 Or. 625 (1994); *Hertz Corp. v. Robineau*, 6 S.W.3d 332, 333-36 (Texas Ct. App. 1999). However, given the rules that already exist in Washington, these cases are not persuasive.

contingent.' " *Brown v. Travelers Ins. Co.*, 610 A.2d 127, 129 (R.I. 1992).

Some courts have found that a super escape clause provides no coverage for a claim, leaving the policy with the excess clause providing sole coverage. *Titan*, 758 So. 2d at 1041. On the other hand, several courts have decided that the policy with the super escape clause is primary. *United States Fid. & Guar. Co. v. Hanover Ins. Co.*, 417 Mass. 651, 655, 632 N.E.2d 402, 404 (1994) (citing *Ins. Co. of N. Am. v. Cont'l Cas. Co.*, 575 F.2d 1070 (3d Cir. 1978); *Protective Nat'l Ins. Co. v. Bell*, 361 So. 2d 1058 (Ala. 1978); *Auto. Underwriters, Inc. v. Hardware Mut. Cas. Co.*, 49 Ill. 2d 108, 273 N.E.2d 360 (1971)).

> These courts reason that, because the excess clause only provides coverage when primary insurance is exhausted, there is no "other valid and collectible insurance" available. Thus, the super-escape clause is not triggered, and the policy containing the super-escape clause is primary. These courts acknowledge that a super-escape clause specifically mentions excess insurance. Nevertheless, these courts hold that the language requiring "other valid and collectible insurance" is controlling, and the mere inclusion of additional language should not allow insurers to avoid coverage.

*Bowers v. Alamo Rent-A-Car, Inc.*, 88 Haw. 274, 283, 965 P.2d 1274, 1283 (1998) (Ramil, J., concurring). "Still other courts have found the clauses to be mutually repugnant and have decided that damages should be shared proportionately." *Fidelity*, 632 N.E.2d at 404 (citing *Dette v. Covington Motors, Inc.*, 486 So. 2d 805 (La. Ct. App. 1986); *Brown v. Travelers Ins. Co.*, 610 A.2d 127 (R.I. 1992); *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 444 S.W.2d 583 (Tex. 1969)).

Budget's policy language contains a super escape clause. Contrary to Budget's assertion, however, this does not automatically mean that New Hampshire's coverage is primary. In *Diaz v. National Car Rental Systems*, 143 Wn.2d 57, 63 n.2, 17 P.3d 603 (2001), our Supreme Court indicated an unwillingness to merely label a policy and use

that label to determine which policy should be considered primary. Rather, the court preferred to consider how the policy functions. *Id.* The rule that a contract with a super escape clause is the primary policy centers on how the policy itself functions. This is consistent with the court's approach in *Diaz.* We therefore adopt the rule that a contract with a super escape clause is the primary policy. The court properly determined that Budget was primarily liable.

■ ■ Budget argues the court erred in awarding New Hampshire attorney fees based on *Olympic Steamship Co. v. Centennial Insurance Co.,* 117 Wn.2d 37, 811 P.2d 673 (1991); *McRory v. Northern Insurance Co.,* 138 Wn.2d 550, 980 P.2d 736 (1999); and RCW 4.84.080(1), .330. *Olympic* extended the right of an insured to recover attorney fees when an insurer refuses to defend or pay the justified action or claim of the insured. 117 Wn.2d at 52. The court properly awarded fees because Budget refused to pay the justified claim of its insured, Mr. Bentley. *See McRory,* 138 Wn.2d at 559-61. For the same reasons, New Hampshire is awarded fees on appeal.

Affirmed.

BROWN, A.C.J., and SWEENEY, J., concur.

Reconsideration denied January 16, 2002.

Review granted at 146 Wn.2d 1020 (2002).