Argued and submitted May 27, reversed and remanded October 27, 1999

## Olivia ERICKSON,
*Respondent,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation,
*Appellant.*

(97C-12315; CA A103338)

989 P2d 481

L. E. Ashcroft argued the cause for appellant. With him on the briefs was Ashcroft, Wiles, LLP.

J. Michael Alexander argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, P. C.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warren, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from a judgment that awarded plaintiff damages on her claim under two insurance policies and from a supplemental judgment that awarded plaintiff attorney fees. We reverse.

We state the facts as alleged by plaintiff and as admitted by defendant:

"1.

"Farmers Insurance Company of Oregon is an Oregon corporation organized under the laws of this state, and is engaged in the business of issuing policies of insurance, including automobile insurance, carrying uninsured motorist coverage.

"2.

"Prior to February 13, 1994, the Defendant had issued a policy of automobile insurance to the Plaintiff bearing Policy No. 73 12601 87 48. Prior to such date, the Defendant had also issued an automobile policy of insurance to Albert Erickson, such policy bearing Policy No. 73 12601 87 47.[1]

"3.

"On or about February 13, 1994, the Plaintiff was a passenger in a vehicle operated by Albert Erickson.[2] At that time and place, the vehicle was involved in a collision with an automobile operated by Edward Mixon. The collision between the vehicle[s] being operated by Albert Erickson and Edward Mixon was a result of the negligence of Mr. Mixon. Mr. Mixon, at the time of such accident, did not have liability insurance covering the loss. As such, Mr. Mixon's vehicle was an 'uninsured motor vehicle' as defined by the policies of insurance issued by the Defendant.

"4.

"The Plaintiff made [a] claim for uninsured motorist benefits under the policies of insurance issued by the

---

[1] Both parties assert that the relevant policy language is identical.

[2] We understand from the parties' arguments that plaintiff and Albert Erickson (Erickson) were divorced before the accident.

Defendant. Such policies each supplied uninsured motorist coverage with limits of $100,000 per person and $300,000.00 per occurrence.

"5.

"Pursuant to the agreement between the Plaintiff and Defendant, the issue of the Plaintiff's damages were submitted to arbitration, resulting in an award of $150,028.23.

"6.

"The Plaintiff is an insured under both policies of insurance issued by the Defendant, and entitled to payment in full for her damages suffered, pursuant to the award which was issued. The Defendant has paid $100,000.00, less appropriate credits,[3] toward satisfaction of the award.

"7.

"The Plaintiff has demanded payment of the balance due of $50,028.23 from the Defendant, and performed all other conditions preceden[t]."

Plaintiff also claimed that she was entitled to reasonable attorney fees under ORS 742.061.

After plaintiff moved for summary judgment, defendant filed a cross-motion for summary judgment and an answer that included the affirmative defense of failure to mitigate damages by settling with the tavern that served Mixon for less than the limit of the tavern's insurance policy. Thereafter, plaintiff raised several affirmative defenses in

---

[3] Plaintiff's reply admitted the following allegations in defendant's answer:

"3.

"As a result of Plaintiff's damages incurred [on] or about February 13, 1994, Plaintiff instituted an action against Edward Mixon a therein named Defendant and an additional Defendant identified as Woodchippers Tavern. Woodchippers Tavern had available and in force and effect to them on the date of the loss, a policy of liability insurance providing li[a]bility limits in the sum of $100,000.00.

"4.

"Thereafter, Plaintiff, with the consent of the Defendant, settled with Woodchippers, the Defendant in the underlying action for the sum of $70,000.00, $30,000.00 less than the policy limits available to Defendant Woodchippers."

her reply in response to the affirmative defense that defendant raised. The trial court entered an order granting plaintiff summary judgment "on the issue of coverage" and denying defendant's cross-motion on that issue. Before the case went to trial on the issue of the reasonableness of plaintiff's settlement with the tavern, defendant dismissed its affirmative defense of failure to mitigate. Plaintiff then moved for judgment on the pleadings, which the court granted. Thereafter, on August 6, 1998, the trial court entered a judgment that awarded plaintiff the $50,028.23 that she had demanded.

 The first issue on appeal is whether plaintiff can stack the benefits of her policy and Erickson's policy.[4] Stacking refers to "[t]he process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate." *Black's Law Dictionary*, 1412 (7th ed 1999). On appeal, defendant contends that the clear and unambiguous policy language operates to prevent stacking.[5] Plaintiff counters that two of the provisions to which

---

[4] Plaintiff correctly asserts that defendant did not comply with ORAP 5.45(4). In *Resources Northwest, Inc. v. Crothers*, 153 Or App 24, 26, 955 P2d 763 (1998), we stated:

"We have, under some circumstances, excused the lack of strict compliance with requirements of ORAP 5.45(4) where noncompliance has not significantly hampered our review. *See, e.g., Edwards v. Merle West Medical Center*, 147 Or App 71, 74 n 2, 935 P2d 442 (1997) (where defendant failed to set forth verbatim pertinent portions of the record, but adequately identified the portions of the record necessary for review, court would consider challenge to trial court's denial of motion for directed verdict); *State v. Alvord*, 118 Or App 111, 114, 846 P2d 432 (1993) (although defendant failed to set forth motion for mistrial verbatim, brief included the quotations that prompted the motion and referred to the relevant audio tape and cue numbers, thereby obviating a search of the record on appeal)."

Here, the factual issues are not in dispute. The first assignment of error concerns the legal issue of whether the insurance policies in issue allow stacking and the second assignment of error concerns the reasonableness of the attorney fee award. Thus, because noncompliance with ORAP 5.45(4) does not significantly hamper our review, strict compliance is excused.

[5] In support of its argument, defendant refers us to several "other insurance" provisions in the policies. The purpose of an "other insurance" provision in a policy is to limit an insurer's liability in the event that there are other policies available to an insured. *See Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 474, 836 P2d 703 (1992) (describing an "other insurance" provision in an umbrella insurance policy as a standard provision that "is intended to limit defendant's liability in the event that" a plaintiff has other insurance available). Generally, there

defendant refers are escape clauses that are unenforceable under ORS 742.504(9) and the *Lamb-Weston* doctrine[6] and that the remaining provision is inapplicable to this case; thus, there is nothing remaining in the policy language to prevent stacking. Alternatively, plaintiff contends that the policies unambiguously contemplate stacking.

■ The interpretation of an insurance policy is a question of law. *Hoffman Construction Co.*, 313 Or at 469. Our task in interpreting the policies is to ascertain the parties' intent based on the terms and conditions of the policy. *Id.* "We interpret those terms and conditions according to what we perceive would be the understanding of the ordinary insurance purchaser." *Smith v. State Farm Insurance*, 144 Or App 442, 446, 927 P2d 111 (1996).

The following policy provisions potentially implicate plaintiff's ability to stack the uninsured motorist benefits under both policies:

"**PART II—UNINSURED MOTORIST**

"**Coverage C—Uninsured Motorist Coverage**
"**(Including Underinsured Motorist Coverage)**

"* * * * *

"**Exclusions**

"* * * * *

---

are three types of "other insurance" clauses: (1) pro rata clauses that "usually provide that if other insurance exists, the insurer will pay its pro rata share of the loss, usually in the proportion that its policy limit bears to the aggregate limit of all other valid and collectible insurance"; (2) excess clauses that "usually provide that an insurer's liability is limited to the amount by which the loss exceeds the coverage provided by all other valid and collectible insurance, up to the limits of the policy containing the excess clause"; and (3) escape clauses that "attempt to avoid all liability for a loss covered by other valid and collectible insurance." Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 11.02 [a], [b] and [c], 433-34 (6th ed 1993).

[6] In *Thurman v. Signal Insurance Co.*, 260 Or 524, 528 n 1, 491 P2d 1002 (1971), the court explained the *Lamb-Weston* doctrine:

"*Lamb-Weston et al v. Ore. Auto. Ins. Co.*, 219 Or 110, 341 P2d 110, 346 P2d 643 * * * (1959), held that where two policies issued by different insurers cover the same loss and both policies attempt to limit coverage by 'other insurance' provisions which conflict with and are repugnant to each other, such insurance provisions are of no effect and the insurers prorate the entire loss up to the total of the combined coverage."

"3. This coverage does not apply to **bodily injury** sustained by a person:

"\* \* \* \* \*

"d. If the injured person was **occupying** a vehicle you do not own which is insured for this coverage under another policy.

"\* \* \* \* \*

"**Other Insurance**

"\* \* \* \* \*

"3. \* \* \* if any other collectible insurance applies to a loss covered by this part, we will pay only our share. Our share is the proportion that our limits of liability bear to the total of all applicable limits.

"4. We will not provide insurance for a vehicle other than **your insured car**, unless the owner of that vehicle has no other insurance applicable to this part.

"5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability." (Boldface in original.)

We begin our analysis by observing that, under Erickson's policy, Paragraph 3 is the only "other insurance" provision that applies to plaintiff. That paragraph unambiguously contemplates stacking and pro rata allocation of responsibility when other insurance is available. Under plaintiff's policy, Paragraph 3 unambiguously contemplates stacking and pro rata allocation as well. However, Exclusion 3d is an escape clause that prohibits plaintiff from obtaining benefits under her policy if she is injured while occupying an insured vehicle that she does not own. Consequently, Exclusion 3d operates to prohibit stacking by plaintiff. With regard to Paragraph 4, defendant asserts that that provision operates against plaintiff to prevent stacking. Plaintiff contends that, if Paragraph 4 operates to deny plaintiff coverage, it is an escape clause as well. We accept plaintiff's contention for the purposes of this opinion. Paragraph 5 does not apply to

plaintiff under either policy because it applies when defendant issues multiple policies to "you." Under the policies, the term "you" means the named insured and his or her "spouse if a resident of the same household." Here, plaintiff is the "you" under her policy. However, she is not the "you" under Erickson's policy.

■ The above analysis means that, if plaintiff's policy is considered by itself, then she is permitted to stack the benefits of her policy with the benefits of another policy unless she was injured while occupying a vehicle that she did not own or a vehicle other than her insured vehicle that was covered by other applicable insurance. Because Exclusion 3d and Paragraph 4, the escape clauses in plaintiff's policy that purport to constitute the exception to the provision permitting stacking, are less favorable than ORS 742.504(9)(a) and (b) require, they are unenforceable.[7] *See Fox v. Country Mutual Ins. Co.,*

---

[7] ORS 742.504 provides, in part:

"Every policy required to provide the coverage specified in ORS 742.502 shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions.

"✳ ✳ ✳ ✳ ✳

"(9)(a) Except as provided in paragraph (c) of this subsection, with respect to bodily injury to an insured while occupying a vehicle not owned by a named insured under this coverage, the insurance under this coverage shall apply only as excess insurance over any other insurance available to such occupant which is similar to this coverage, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.

"(b) With respect to bodily injury to an insured while occupying or through being struck by an uninsured vehicle, if such insured is an insured under other insurance available to the insured which is similar to this coverage, then the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance or such other insurance, and the insurer shall not be liable under this coverage for a greater proportion of the damages than the applicable limit of liability of this coverage bears to the sum of the applicable limits of liability of this insurance and such other insurance.

"(c) With respect to bodily injury to an insured while occupying any motor vehicle used as a public or livery conveyance, the insurance under this coverage shall apply only as excess insurance over any other insurance available to the insured which is similar to this coverage, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance."

327 Or 500, 503, 964 P2d 997 (1998) (reasoning that ORS 742.504 "obligates defendants to provide UM coverage to plaintiff under the statute's terms whether or not UM coverage appears in defendants' policy"); *see also Vega v. Farmers Ins. Co.*, 323 Or 291, 301-03, 918 P2d 95 (1996) (holding that: (1) ORS 742.504(1) to (12) "are the *only* provisions that disfavor insureds that an insurer may include in a policy for UM/UIM coverage"; (2) ORS 742.504 "set[s] out a comprehensive model UM/UIM policy that may be varied only in the sense that terms that disfavor insureds may be excluded or softened and extraneous terms that are neutral or that favor insureds may be added"; and (3) an exhaustion provision was unenforceable because it was less favorable than ORS 742.504 requires (emphasis in original)).[8]

■■ In the event that terms in the policies are unenforceable because they conflict with statutory requirements, the policies themselves provide the remedy. "**PART V—CONDITIONS**" of plaintiff's policy contains a provision that provides that "[p]olicy terms which conflict with laws of Oregon are hereby amended to conform to such laws." When plaintiff's policy is amended to comply with the statute, plaintiff's policy provides that, under Paragraph 3, she is permitted to stack the benefits of her policy with the benefits of another policy subject to ORS 742.504(9)(a) and (b). Those provisions, however, prohibit stacking in the factual circumstances of this case where plaintiff is injured while occupying a vehicle that she does not own or a vehicle other than her insured vehicle, that is covered by other applicable insurance. Erickson's policy provides for pro rata allocation with stacking. Because there is no way to give effect to the allocation provisions of both policies, other than to make an arbitrary decision, we deem that they are repugnant to each other.

---

Although ORS 742.504 was amended by Oregon Laws 1997, chapter 808, section 2, the quoted language was not amended.

[8] It could be argued that the escape clauses in plaintiff's policy do not operate to provide her with less favorable benefits than ORS 742.504(9)(a) and (b) require because plaintiff has received a total of $100,000, the amount to which plaintiff would be entitled under those statutory sections. However, acceptance of that argument would allow defendant to evade the interpretation of the applicable provisions in plaintiff's policy in light of the statutory requirements that govern uninsured motorist provisions in insurance policies when it has also purported to agree in Paragraph 3 to permit stacking.

ORS 742.506, which was enacted in 1979, governs the manner in which such a repugnancy is to be resolved.[9] It provides:

"Notwithstanding the contrary provisions of any policy, the provisions of ORS 742.504 (9)(a) to (c) shall control allocation of responsibility between insurers, except that if all policies potentially involved expressly allocate responsibility between insurers, or self-insurers, without repugnancy, then the terms of the policies shall control."

Under the statute, "the provisions of ORS 742.504(9)(a) to (c) shall control" the allocation of responsibility between insurers when a repugnancy exists. *See* note 9. Although we recognize the general proposition that there is nothing that prohibits an insurer from agreeing to terms more favorable to the insured than the statutes require, the legislature has said that, in the event of a repugnancy, and "[n]otwithstanding the contrary provisions of any policy, the provisions of ORS 742.504(9)(a) to (c) *shall control* allocation of responsibility between insurers." ORS 742.506 (emphasis added). The effect of the mandatory language of ORS 742.506 is to replace the repugnant provisions of the uninsured motorist coverage in the policies with the language of the statutes. After the language of the statutes is substituted into plaintiff's and Erickson's policies, they control the allocation of responsibility concerning the amount that is owed under each policy. As a result of the statutes, both policies contain the statutory nonstacking provisions.

Section (9)(a) limits uninsured motorist coverage to excess coverage over other insurance that is available and then to the amount by which the applicable limit of liability exceeds the applicable limit of the other insurance. Similarly, section 9(b) limits uninsured motorist coverage to damages that are deemed not to exceed the higher of the applicable

---

[9] Although neither party cited to this statute, the Supreme Court has stated that "the parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law." *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998). It could be argued that ORS 742.506 is inapplicable when there is only one insurer involved as in this case. However, we believe that the better-reasoned approach is to treat the policies as if they were issued by separate insurers. That approach is prompted by the fact that the policies are the product of discrete agreements made in consideration of different premiums.

limits of the policies. Here, both policies provide for per-person limits of $100,000. Because defendant's policies reflect the statutory requirements of ORS 742.504(9)(a) and (b), they operate to prohibit stacking in this case, and plaintiff's recovery is limited to $100,000. Therefore, the trial court erred in granting summary judgment to plaintiff on the issue of stacking benefits and in denying defendant's cross-motion for summary judgment on that issue.

Defendant also assigns error to the award of attorney fees to plaintiff. "We have reversed the judgment on the merits, and the judgment for attorney fees necessarily falls with it." *Shannon Plantations, Inc. v. Berovic,* 159 Or App 283, 295, 976 P2d 1149 (1999).

Reversed and remanded.