Argued and submitted April 24, 2000, affirmed August 15, 2001

Laurie K. THOMPSON,
*Appellant,*

*v.*

ESTATE OF ADRIAN L. PANNELL,
Deceased,
*Administratrix,*

*and*

PORTLAND SCHOOL DISTRICT NO. 1J,
a public corporation,
*Respondent.*

9706-04406; A103183

29 P3d 1184

John Wittrock argued the cause for appellant. On the briefs were Kathleen O'Brien and Wittrock & O'Brien.

Peter R. Mersereau argued the cause for respondent. On the brief were Thomas W. McPherson and Mersereau & Shannon, LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

Armstrong, J., concurring.

**BREWER, J.**

In this declaratory judgment action, plaintiff appeals from a judgment on the pleadings in favor of defendant school district as to plaintiff's claim that she was entitled to uninsured motorist (UM) benefits under defendant's self-insurance for motor vehicle liability. Plaintiff also appeals from summary judgment for defendant as to plaintiff's claim for breach of an implied contract of accidental medical and dental insurance for school volunteers. We affirm.

Plaintiff's children attended school in defendant school district. In June 1995, plaintiff's daughter's class took a three-day school-sponsored trip to a camp on the Oregon coast. Plaintiff volunteered to act as a chaperone on the trip. At the request of school staff, plaintiff transported the students' luggage to and from the camp in her van. During the return trip, plaintiff's van was struck head-on by a vehicle driven by an uninsured motorist. The uninsured motorist was killed, and plaintiff was seriously injured.

At the time of plaintiff's accident, defendant was self-insured for liability, including liability arising out of motor vehicle accidents. It also carried excess liability insurance covering losses exceeding $1 million, up to a limit of $2 million. Although defendant's excess liability insurance policy included coverage for bodily injury and property damage arising out of automobile accidents, it did not include uninsured UM coverage.[1]

Plaintiff recovered UM and personal injury protection (PIP) benefits under her own motor vehicle liability insurance policy. Because her medical expenses exceeded the amount recovered, plaintiff also sought additional benefits from defendant. Defendant denied coverage.

Plaintiff then brought this action, seeking a declaration that she was entitled to coverage under defendant's

---

[1] Defendant's excess liability policy stated that it included "**AUTOMOBILE COVERAGE**" for "all sums in excess of the **Self-insured Retention** which an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**." (Boldface in original.)

motor vehicle liability self-insurance. In that context, plaintiff alleged that she was engaged in defendant's business as a volunteer and as defendant's agent or bailee; that defendant had made representations to volunteers, including plaintiff, regarding insurance coverage for volunteers; that defendant was self-insured for motor vehicle liability pursuant to ORS 806.130; and that plaintiff was "within the class of persons" whom statutes relating to UM coverage were intended to benefit. Relying on defendant's "Guidebook for Volunteers"— stating, in part, that "volunteers are covered by accidental medical and accidental dental insurance while performing on site volunteer service"—plaintiff separately claimed that, in denying coverage, defendant breached an implied contract of accidental medical and dental insurance for school volunteers.[2] In its answer, defendant admitted that it was self-insured for motor vehicle liability and admitted that it had denied coverage to plaintiff, but it denied plaintiff's other allegations. In addition, as an affirmative defense to plaintiff's claim for declaratory relief, defendant asserted that it was exempt from the Insurance Code pursuant to ORS 731.036(4) and (5) and ORS 30.282.

Defendant then moved for judgment on the pleadings as to plaintiff's claim for declaratory relief. Defendant argued that, as a matter of law, it was not subject to the Financial Responsibility Law, ORS 806.010 *et seq.*,[3] because a school district is not a "person" for the purpose of that statutory scheme. Defendant also argued that it was expressly exempted, under ORS 731.036, from the Insurance Code, including the UM-related provision in ORS chapter 742.[4] Defendant argued that, even assuming that it was subject to the Financial Responsibility Law and was not exempt from Insurance Code requirements for UM coverage, plaintiff's vehicle was not covered under its self-insurance, because it

---

[2] Plaintiff also brought a claim for negligence against the estate of the uninsured motorist whose vehicle struck her van. The estate is not a party to this appeal.

[3] ORS 806.010 *et seq.* provides for the crime of driving uninsured and, as discussed below, sets out methods of complying with requirements relating to insurance.

[4] The Insurance Code encompasses ORS chapters 731-735, 737, 742-744, 746, 748, and 750.

was a nonowned vehicle. Finally, defendant argued that plaintiff's own UM coverage exceeded any UM benefits to which plaintiff might be entitled under defendant's self-insurance or its excess liability policy. Defendant also moved for summary judgment on plaintiff's implied contract claim on the grounds that plaintiff had failed to allege an essential term of the purported implied contract of insurance for school volunteers, namely, the amount of coverage; that the coverage extended only to accidental injuries that occurred "on site" of school district property; and that such coverage was limited to $5,000 in medical and dental expenses.

In opposition to defendant's motion for judgment on the pleadings as to her claim for declaratory relief, plaintiff contended that, as a self-insurer, defendant was required under ORS 806.130 to extend coverage to at least the limits specified in ORS 806.070 and that, consistent with ORS 742.502(2)(a)—providing that a motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a lower limit is elected in writing—defendant's UM coverage limit was $1 million, the amount up to which it apparently was insured for bodily injury under its self-insurance. In opposition to defendant's motion for summary judgment on her implied contract claim, plaintiff asserted that there were issues of material fact as to whether the accident took place "on site," within the meaning of that phrase in the "Guidebook for Volunteers," and as to whether defendant's liability to school volunteers was limited to $5,000 or was, instead, a matter within defendant's discretion up to the limits of defendant's self-insurance and its excess liability insurance policy.

The trial court concluded that, under ORS 806.130, a self-insurer for motor vehicle liability was required to provide UM coverage only in the minimum amount stated in ORS 806.070, namely, $25,000, and that ORS 742.502 did not require a higher amount. Because plaintiff had already recovered an amount in excess of that amount under her own coverage, the court granted defendant's motion for judgment on the pleadings with respect to plaintiff's claim for declaratory relief. It also granted defendant's motion for summary

judgment on plaintiff's implied contract claim, subject to entry of judgment in plaintiff's favor for $5,000 in damages.

On appeal, plaintiff first assigns error to the trial court's entry of judgment on the pleadings as to her claim for declaratory relief. She again asserts that, considered in the context of defendant's excess liability insurance policy—insuring defendant for amounts in excess of $1 million—defendant's self-insurance constitutes, in effect, an insurance "policy" providing bodily injury liability coverage of $1 million; that, under ORS 742.502, defendant's self-insurance must be deemed to provide UM coverage in that amount; and that she is entitled to benefits under that coverage.[5] Defendant again asserts that, as a public body, it is not subject to the Financial Responsibility Law; that, as a self-insured entity, it is exempt from the Insurance Code; that plaintiff was not an "insured" and that her vehicle was not an "insured vehicle" for the purposes of either defendant's self-insurance or its excess liability policy; and that any UM coverage available to plaintiff under defendant's self-insurance was exceeded by her own UM coverage.

■ On review of the trial court's entry of judgment on the pleadings as to plaintiff's claim for declaratory relief, ORCP 21 B, we review the pertinent pleadings in the light most favorable to plaintiff to determine whether, in their entirety, they affirmatively demonstrate that plaintiff has not stated a claim for relief or that defendant has a complete defense. *See Slogowski v. Lyness*, 324 Or 436, 439, 927 P2d 587 (1996); *Williams v. Tri-Met*, 153 Or App 686, 958 P2d 202, *rev den* 327 Or 431 (1998). In this case, whether plaintiff

---

[5] Plaintiff appears to assert on appeal that she is a covered party for purposes of UM coverage under both defendant's self-insurance and its excess liability policy. In addition, defendant appears to respond to the latter argument, at least to the extent of asserting that the issuer of the excess liability policy is not a party to this action and by briefly proposing an interpretation of the excess liability policy. However, plaintiff's second amended complaint does not allege entitlement to benefits under the excess liability policy. Rather, it lays claim only to defendant's self-insurance. Accordingly, we treat plaintiff's description and discussion of the excess liability policy as part of her argument that defendant's self-insurance constitutes a "policy" under which, complementarily to the excess liability policy, she also is a covered party for amounts *up to* (rather than amounts exceeding) $1 million for bodily injury, and her argument that the self-insurance likewise must be reformed to include UM coverage up to that amount.

was entitled to a declaration of UM coverage under defendant's self-insurance for motor vehicle liability is purely a question of law under applicable statutes, including ORS 806.010 *et seq.* and ORS 742.502. *See, e.g., Fox v. Country Mutual Ins. Co.*, 169 Or App 54, 7 P3d 677 (2000), *rev den* 332 Or 137 (2001) (determining, as a matter of statutory interpretation, whether the trial court erred in granting the defendants' motion for summary judgment against the plaintiff's claim for a declaration of entitlement to UM benefits). We answer that question by applying the familiar methodology of statutory interpretation set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993).

ORS 806.010 provides for the offense of "driving uninsured," that is, driving while not in compliance with the motor vehicle-related "financial responsibility requirements" of this state. ORS 806.060 sets out methods by which the financial responsibility requirements can be satisfied. It provides, in part:

"(1)  To meet the financial responsibility requirements, a person must be able to respond in damages in amounts not less than those established under the payment schedule under ORS 806.070.

"(2)  A person may only comply with the financial responsibility requirements of this state by establishing the required ability to respond in damages in one of the following ways:

"(a)  Obtaining a *motor vehicle liability policy* meeting the requirements under ORS 806.080 that will provide at least minimum limits necessary to pay amounts established under the payment schedule under ORS 806.070.

"* * * * *

"(d)  Becoming *self-insured as provided under ORS 806.130.*" (Emphasis added.)

In turn, ORS 806.070 provides that an insurance policy described under ORS 806.080 must provide for payment of at least $25,000 because of bodily injury to or death of any one person in any one accident. *See also* ORS 806.080 (providing that a "motor vehicle liability insurance policy" must meet

specified requirements, including providing the minimum limits of coverage required under ORS 806.070).

ORS 806.130 sets out requirements for "self-insurers." It provides, in part, that a self-insurer must obtain a "certificate of self-insurance" from the Department of Transportation, ORS 806.130(1), and must

> "[a]gree to pay the same amounts with respect to an accident occurring while the certificate [of self-insurance] is in force that an insurer would be obligated to pay *under a motor vehicle liability insurance policy*, including uninsured motorist coverage and liability coverage to at least the limits specified in ORS 806.070." ORS 806.130(3) (emphasis added).

ORS 742.450 provides, in part:

> "(2) Every *motor vehicle liability insurance policy* issued for delivery in this state shall contain an agreement or indorsement stating that, as respects bodily injury * * *, the insurance provides * * *:

> "(a) The coverage described in ORS 806.070 and 806.080[.]" (Emphasis added.)

Finally, ORS 742.502(2)(a) provides, in part:

> "A *motor vehicle bodily injury liability policy* shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements of ORS 806.070 for bodily injury or death." (Emphasis added.)

*See also* ORS 742.447 (requiring an insurer issuing motor vehicle insurance to "issue *with the policy*" a card showing the effective dates of the insurance) (emphasis added).

■■    By their terms, the quoted provisions demonstrate that insurance maintained by a self-insurer pursuant to a certificate of self-insurance is not a "motor vehicle liability insurance policy" within the meaning of the latter statutory phrase. *See State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995) (when the legislature uses different terms in related statutes, court presumes that the legislature intended different meanings; citing *PGE*, 317 Or at 611). Accordingly,

requirements for a "motor vehicle liability insurance policy" set out in ORS chapters 806 and 742 apply to self-insurance only to the extent that those requirements are made applicable to self-insurance by operation of ORS 806.130 or another statute setting out requirements for self-insurance. *See Farmers Ins. Co. v. Snappy Car Rental, Inc.*, 128 Or App 516, 520-21, 876 P2d 833, *rev den* 319 Or 625 (1994) (in the context of determining whether a self-insured car rental agency was required under ORS 806.080 to provide coverage to a person who rented a vehicle from the car rental agency, the court noted different methods of compliance with the Financial Responsibility Law set out in ORS 806.060, noted that neither ORS 806.080 nor ORS 806.130 makes any reference to the other, and concluded that ORS 806.080 imposes no obligations on self-insurers). ORS 806.130(3) requires a self-insurer subject to that provision to provide "uninsured motorist coverage and liability coverage to at least the limits set out in ORS 806.070." That limit is $25,000.

We therefore need not decide whether defendant is a "person" within the meaning of ORS chapter 806; whether any of the exemptions from the Insurance Code provided in ORS 731.036 applies to defendant under the circumstances at issue here; or whether plaintiff is an insured under defendant's self-insurance or its excess liability insurance policy. Even assuming that we might reach conclusions favorable to plaintiff in regard to any or all of those issues, plaintiff would not be entitled to any UM benefits under defendant's self-insurance, because she had already recovered an amount of UM benefits in excess of $25,000 from her own insurer. The trial court did not err in granting defendant's motion for judgment on the pleadings as to plaintiff's claim for a declaration that she was entitled to UM coverage under defendant's self-insurance.[6]

---

[6] Contrary to the opinion of the concurrence, this is not a case that, consistent with *Miller v. Water Wonderland Improvement District*, 326 Or 306, 951 P2d 720 (1998), we must resolve by applying ORS chapter 278, which provides for motor vehicle liability insurance and self-insurance for, among other categories of vehicle, vehicles "within [a] local public body's control." ORS 278.215(2). Plaintiff does not assert, and the record does not establish, that her vehicle was "within the local body's control" as that term is used in ORS 278.215(2). In *Miller*, the plaintiff sought a declaration that, pursuant to the Public Records Law, ORS chapter 192, he was entitled to inspect and copy records of a nonprofit water improvement corporation organized under ORS chapter 554. The defendant asserted that it was not

■ We turn to plaintiff's second assignment of error, in which she asserts that the trial court erred in granting defendant's motion for summary judgment as to her claim for breach of an implied contract of insurance coverage for school volunteers. The trial court concluded that, even in the light most favorable to plaintiff and even assuming that the injury to plaintiff occurred "on site" within the meaning of that phrase in defendant's "Guidebook for Volunteers," the only evidence in the record was that, after defendant's policy of accidental medical and dental insurance for volunteers expired in 1992, defendant "intended to continue on a self-insured basis" the same coverage amount, namely, $5,000. The trial court therefore granted defendant's motion for summary judgment on the condition that judgment in that amount be entered in plaintiff's favor.

In this court, plaintiff again asserts that defendant represented in its "Guidebook for Volunteers" that volunteers were covered by accidental medical and dental insurance and that the guidebook contained no express coverage limitations. She also again asserts that, although defendant previously had a policy issued by The Hartford insurance company having an indemnity limit of $5,000 for volunteer medical and dental claims, that policy had expired in 1992; that, at the time of her accident, defendant was self-insured as to accidental medical and dental insurance for volunteers; that, before plaintiff's claim, no volunteer had ever made a claim based on an automobile accident and that the court therefore could not infer that such claims were not within the scope of defendant's accidental medical and dental insurance for volunteers; and that defendant's self-insurance for that purpose

subject to the Public Records Law and that the plaintiff had "adequate recourse" to examine the records pursuant to the records-inspection provision of ORS chapter 554. Noting that "parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law," and noting that, in any event, the defendant had expressly relied on ORS chapter 554, *id.* at 309 n 2, the Supreme Court decided the case by applying the latter statute. Here, plaintiff's claim was brought exclusively under ORS chapter 806, and neither plaintiff nor defendant advanced any factual or legal argument under ORS chapter 278. Nor is consideration of ORS chapter 278 necessary to our interpretation of the statutes relied on by the parties. *See Erickson v. Farmers Ins. Co.*, 163 Or App 426, 435 and n 9, 989 P2d 481 (1999), *reversed on other grounds* 331 Or 681 (2001) (resolving issue arising under ORS chapter 742 by consideration of provision of that chapter not cited by the parties). For those reasons, we decline to consider whether plaintiff was entitled to a declaration of coverage under ORS chapter 278.

was not limited to $5,000 in coverage. Plaintiff argues that the trial court therefore erred in granting summary judgment to defendant on the condition that plaintiff take judgment in the amount of $5,000. Defendant responds that plaintiff is alleging the existence of an implied-in-fact contract, that an implied-in-fact contract of insurance arises only when there is actual agreement on all five essential elements of the purported contract, and that, where plaintiff failed to allege any amount of insurance, no such contract arose here. Defendant also argues that, even assuming that there was an implied contract of accidental medical and dental insurance between it and plaintiff, the record in this case indisputably demonstrates that the amount of coverage was limited to $5,000 and that the trial court therefore did not err in granting its motion for summary judgment on the condition that judgment be entered in that amount.

■■  An implied-in-fact contract is one in which the parties' agreement is inferred in whole or in part from their conduct. *Staley v. Taylor*, 165 Or App 256, 262, 994 P2d 1220 (2000). Assuming that plaintiff and defendant were parties to an implied contract of accidental medical and dental insurance for volunteers,[7] the pertinent question here is whether plaintiff was entitled to an amount of coverage greater than $5,000. As the party moving for summary judgment on plaintiff's implied contract claim, defendant had the initial burden to establish that there was no genuine issue as to that material fact. If defendant met its initial burden, it then was incumbent on plaintiff, the nonmoving party, to set forth "specific facts showing that there is a genuine issue as to any material fact for trial." ORCP 47 D. We review the summary judgment record in the light most favorable to plaintiff to determine whether there is a genuine issue of material fact and, if not, whether defendant was entitled to judgment as a matter of law. ORCP 47 C; *see also Gish v. Youngblood*, 161 Or App 591, 594-95, 984 P2d 931, *rev den* 329 Or 527 (1999) (setting out those standards; citing *Jones v. General Motors*

---

[7] In this case, where defendant provided plaintiff with its "Guidebook for Volunteers" and plaintiff proceeded to act as a volunteer, the implied contract, if any, was in the nature of a unilateral contract. *See* Joseph M. Perillo, 1 *Corbin on Contracts* § 1.23 (revised ed 1993).

*Corp.*, 325 Or 404, 939 P2d 608 (1997)). The summary judgment record includes the "pleadings, depositions, affidavits and admissions on file." ORCP 47 C; *see also* ORCP 47 D (setting out form of affidavits and exhibits in support of or opposing summary judgment). We turn to the record in this case.

In support of its motion for summary judgment, defendant submitted the affidavit of its insurance broker, Henderson, to which were attached copies of its expired policy of insurance issued by The Hartford and its excess liability insurance policy. By its terms, the policy issued by The Hartford provided a maximum benefit of $5,000 for accidental medical expenses and $250 for accidental dental expenses incurred by "PARTICIPANTS IN THE VOLUNTEER TEACHER'S AIDES ACTIVITIES SPONSORED BY THE POLICYHOLDER" while "PARTICIPATING IN THE VOLUNTEER TEACHER'S AIDES ACTIVITIES * * * AND SUCH PARTICIPATION IS ON THE PREMISES DESIGNATED BY AND UNDER THE DIRECT SUPERVISION OF THE POLICYHOLDER."[8] Also by its terms, defendant's excess liability policy lacked any provision relating to accidental medical or dental coverage for volunteers. Defendant also submitted the affidavit of its insurance claims specialist in which she averred that, until September 1992, the reference in the "Guidebook for Volunteers" to "Accidental Medical and Dental Insurance Coverage for Volunteers" meant the policy issued by The Hartford; that, after that date, defendant elected to become self-insured for that risk to the same dollar limit of coverage; and that defendant had never paid, and lacked discretion to pay, an amount in excess of that limit on a "no-fault" claim by a volunteer.

In opposition to defendant's motion, plaintiff submitted a document captioned "PORTLAND PUBLIC SCHOOL DISTRICT" and listing 12 "CLAIMS" by persons categorized as "OCCUPATION VOLUNTEERS." One entry on the list indicated that the amount paid was $12,726.98. Plaintiff also submitted a 1977 Portland Public School District document

___

[8] Consistent with the terms of the policy, in his affidavit, Henderson averred that the expired policy issued by The Hartford was limited to $5,000. He also averred that the term "premises" meant defendant's real property, that is, land and buildings.

captioned "POLICY ON LIABILITY CLAIMS HANDLING" and related deposition testimony of defendant's risk manager and defendant's claims specialist that, according to plaintiff, raised a question of fact as to whether the purported $5,000 limit represented an absolute limit on coverage or, instead, merely a limit on discretionary payments by defendant's risk manager.[9] Finally, plaintiff argued that the policy issued by The Hartford had expired and that the "Guidebook for Volunteers" (submitted by defendant as an attachment to defendant's claims specialist's affidavit) lacked any express coverage limit.

We conclude that, even viewing the stated facts and all reasonable inferences in the light most favorable to plaintiff, there was no disputed issue of material fact in regard to the coverage limit of the accidental medical and dental insurance for volunteers referred to in defendant's "Guidebook for Volunteers." In particular, it was undisputed that defendant's expired policy for that purpose, issued by The Hartford, was limited to $5,000 in coverage. In addition, defendant's insurance claims specialist averred that defendant's self-insurance for accidental medical and dental expenses incurred by volunteers also was limited to $5,000. Finally, the record indicates that defendant's excess liability policy lacked any coverage for accidental medical and dental expenses incurred by volunteers. Although plaintiff submitted evidence purporting to show that defendant had paid a volunteer claim in an amount in excess of $5,000 and evidence purporting to show that the asserted $5,000 limit pertained only to amounts payable within the discretion of defendant's risk manager, the evidence failed to demonstrate that the described claim or the described payment policy related to accidental medical or dental expenses, as opposed to some other type of expense or basis of coverage. None of plaintiff's evidentiary submissions showed that defendant had ever insured, or agreed to insure, volunteers against accidental medical and dental expenses in an amount exceeding $5,000. On this record, no reasonable factfinder could so find. The trial court did not err in granting defendant's

---

[9] The list of "CLAIMS" and the Portland Public School District "POLICY ON LIABILITY CLAIMS HANDLING" were attached to plaintiff's counsel's affidavit, wherein she averred that they were "materials produced by defendant."

motion for summary judgment as to plaintiff's implied contract claim.

Affirmed.

**ARMSTRONG, J.,** concurring.

I concur in the majority's decision to affirm the trial court judgment. I write separately, however, because I cannot join in the majority's decision to decide this case on the basis of a statute that does not apply to it.

The majority resolves whether plaintiff can recover uninsured motorist benefits from defendant by applying ORS 806.130 to her claim for those benefits. It reasons that that statute, if it applies to defendant, would require defendant to provide no more than the $25,000 in uninsured motorist benefits to plaintiff. Because plaintiff already has received $50,000 in those benefits from her own insurance carrier, she is not entitled to receive additional benefits from defendant.

The problem with that approach is that it decides the case on the basis of a statute that does not apply to defendant, ORS 806.130, while ignoring the statute that does, ORS 278.215. Admittedly, the parties did not identify ORS 278.215 as the controlling statute, but we are not free to ignore that statute simply because the parties have not cited it. *See Miller v. Water Wonderland Improvement District,* 326 Or 306, 309 n 3, 951 P2d 720 (1998) ("[T]he parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law."). Accordingly, I believe that we must decide the case under ORS 278.215. That statute provides, as relevant, that

"[a]ny local public body, as defined in ORS 30.260, which establishes a self-insurance fund under ORS 30.282 for or on account of the operation of motor vehicles within the local public body's control, shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504 and may provide the personal injury protection benefits required under ORS 742.520 to 742.542.

"(3)  The uninsured motorist coverage provided under this section shall be excess over any other collateral benefits to which an injured person is entitled, including, but not

limited to, other uninsured motorist coverage, insurance benefits, governmental benefits or gratuitous benefits."

ORS 278.215(2), (3). Defendant's self-insurance fund is subject to this statute.[1] It follows, therefore, that, contrary to defendant's position, defendant's self-insurance fund must provide uninsured motorist coverage "for and on account of the operation of motor vehicles within [defendant's] control."

Because of the basis on which I believe that we should decide this case, we need not decide what monetary limit applies to the uninsured motorist coverage that ORS 278.215 requires defendant to provide. I note, however, that the limit depends on the language of ORS 278.215, rather than on the language of ORS 806.130 on which the majority relies. *See* 176 Or App at 97-98.

Furthermore, I am uncertain whether the interpretation that the majority gives to ORS 806.130 is correct. When the latter statute is viewed in context with its predecessor, ORS 486.570 (1981),[2] and with the uninsured motorist coverage statutes, ORS 742.500 to ORS 742.504, it appears to set the limit of uninsured motorist coverage for a self-insurer that is subject to ORS 806.130 and that does not

---

[1] Defendant is a local public body as defined in ORS 30.260, which defines "[p]ublic body" to include school districts and a "[l]ocal public body" as "any public body other than the state." ORS 30.282(1) provides, in turn, that the

"governing body of any local public body may procure insurance against liability of the public body and its officers, employees and agents acting within the scope of their employment or duties, and in addition to, or in lieu thereof, may establish a self-insurance fund against such liability of the public body and its officers, employees and agents."

Defendant's self-insurance fund is a fund established under ORS 30.282(1), and it insures defendant and its officers, employees and agents against liability arising from the operation of motor vehicles.

[2] ORS 486.570 (1981) is the direct predecessor of ORS 806.130. *Compare* ORS 486.570 (1981) *with* ORS 806.130. It allowed a person who had more than 25 registered vehicles to apply to the state Insurance Division for a certificate of self-insurance. Under the statute, each applicant had to

"agree to pay the same amounts with respect to an accident occurring while the certificate is in force that an insurer would be obligated to pay under a motor vehicle liability insurance policy, including uninsured motorist coverage and liability coverage."

ORS 486.570(2) (1981).

specify an amount of uninsured motorist coverage at the liability limit set by the self-insurer for its fund. Both ORS 806.130(3)[3] and ORS 742.502(2)(a)[4] specify that the people responsible for selecting the amount of uninsured motorist coverage provided by a self-insurer or a motor vehicle insurer cannot select an amount that is less than the minimum amount required by ORS 806.070 for liability coverage, which is now $25,000 for injury or death to one person in any one accident. *See* ORS 806.070(1)(a), (2)(a). However, ORS 742.502(2)(a) also provides that a

> "motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits."

If a motor vehicle liability insurance policy contained no provision for uninsured motorist coverage, the coverage would be imposed by statute, and it would be imposed at the liability limit for the policy. *See* ORS 742.038; ORS 742.502(2)(a).

I am not sure that the result would be different for a self-insurer that is subject to ORS 806.130 and that fails to agree to provide uninsured motorist coverage.[5] Such a self-insurer is required to agree

---

[3] ORS 806.130(3) provides that a self-insurer who obtains a self-insurance certificate from the state Department of Transportation must

> "[a]gree to pay the same amounts with respect to an accident occurring while the certificate is in force that an insurer would be obligated to pay under a motor vehicle liability insurance policy, including uninsured motorist coverage and liability coverage to at least the limits specified in ORS 806.070."

[4] ORS 742.502(2)(a) provides, as relevant, that a

> "motor vehicle bodily injury liability policy shall have the same limits for uninsured motorist coverage as for bodily injury liability coverage unless a named insured in writing elects lower limits. The insured may not elect limits lower than the amounts prescribed to meet the requirements for ORS 806.070 for bodily injury or death."

[5] That presumably could not happen, because ORS 806.130 requires a person to apply for and obtain a certificate of self-insurance from the state Department of Transportation in order to function as a self-insurer under that statute. *See* ORS 806.130(1). Because issuance of the certificate is conditioned on the self-insurer's agreement to provide uninsured motorist coverage in amounts not less than the limits specified in ORS 806.070, *see* ORS 806.130(3); ORS 806.140(1), no self-insurer under ORS 806.130 could obtain the required certificate without providing the required uninsured motorist coverage. That fact confirms the inapplicability of ORS 806.130 to defendant. If the statute applied to defendant, defendant would have gotten a certificate of self-insurance from the state Department of

> "to pay the same amounts with respect to an accident occurring while the [self-insurance] certificate is in force that an insurer would be obligated to pay under a motor vehicle liability insurance policy."

ORS 806.130(3). An insurer that failed to provide uninsured motorist coverage under its policy would be required to pay an uninsured motorist claimant up to the liability limit specified in the policy, so a self-insurer that failed to provide uninsured motorist coverage might be required to pay such a claimant up to the liability limit of its coverage as well.[6] I am equally unsure whether the result would be different under ORS 278.215(2) for a self-insured local public body such as defendant that failed to include uninsured motorist coverage as a component of its self-insurance fund.[7]

As I noted earlier, however, I do not believe that we need to decide what limit applies to the uninsured motorist coverage that ORS 278.215(2) requires defendant to provide through its self-insurance fund. Because defendant's self-insurance fund does not, by its terms, include uninsured motorist coverage, the coverage that does apply to defendant is the coverage required by law. ORS 278.215(2) requires

---

Transportation and, as a consequence, would have provided uninsured motorist coverage for its vehicles. It did not do that, which suggests, again, that the statute does not apply to defendant, that the majority is deciding the case on an improper basis, and that the majority's reliance on an inapplicable statute is causing it to resolve an issue that presumably could never arise, to wit, the consequence of a self-insurer's failure to provide the uninsured motorist coverage required by ORS 806.130(3).

[6] I acknowledge that the language quoted above from ORS 806.130(3) continues with a clause that states that the obligation undertaken by a self-insurer includes the obligation to pay "insured motorist coverage and liability coverage to at least the limits specified in ORS 806.070." The majority reads that language in isolation to mean that a self-insurer that fails to include uninsured motorist coverage as a component of its self-insurance fund is subject to having that coverage imposed under ORS 806.130 at the limit specified in ORS 806.070. I am not so sure. The clause on which the majority relies tells a self-insurer the lowest limits to which it can *agree* to provide liability and uninsured motorist coverage under its self-insurance fund. I am not sure that it establishes the limit for uninsured motorist coverage that will be imposed when the self-insurance fund is silent about uninsured motorist coverage but specifies a liability limit that is above the minimum specified in ORS 806.070.

[7] The language in ORS 278.215(2) that imposes that requirement differs from the comparable language in ORS 806.130(3), so the approach used by the majority to determine the coverage limit under ORS 806.130(3) cannot be used to resolve the same issue under ORS 278.215(2).

defendant to provide uninsured motorist coverage for motor vehicles within its control. As discussed below, I would conclude that plaintiff has not alleged sufficient facts in her complaint to support a finding that her vehicle was under defendant's control. Consequently, her vehicle is not one that is subject to uninsured motorist coverage under defendant's self-insurance fund.

The trial court decided plaintiff's declaratory judgment claim for uninsured motorist coverage by granting defendant's motion for judgment on the pleadings. *See* ORCP 21 B. In evaluating such a motion, "we accept as true all well-pleaded allegations and all reasonable inferences that may be drawn therefrom, *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992), *recons den* 313 Or 308, 844 P2d 905 (1993), but disregard any allegations that are conclusions of law, *Tydeman v. Flaherty*, 126 Or App 180, 182, 868 P2d 755 (1994)." *Huang v. Claussen*, 147 Or App 330, 332, 936 P2d 394, *rev den* 325 Or 438 (1997); *see also Walthers v. Gossett*, 148 Or App 548, 558, 941 P2d 575 (1997) (plaintiff must do more than state "bald legal conclusion[s]" in order to provide a factual predicate for her claim for relief). In *Huang*, the plaintiff alleged a claim for breach of contract under a creditor-beneficiary theory. We held that the defendants were entitled to judgment on the pleadings because the plaintiff had failed to allege any facts showing that the parties to the contract intended to benefit the plaintiff. *Huang*, 147 Or App at 333-35. Plaintiff's complaint suffers from a similar defect on the issue whether her vehicle was subject to defendant's control.

As noted, ORS 278.215(2) requires defendant to provide uninsured motorist coverage under its self-insurance fund for all vehicles within its control. In her complaint, plaintiff does not specifically allege that the vehicle was in defendant's control. Moreover, the facts that she alleges cannot rationally lead to that conclusion.[8] Neither we nor the Supreme Court has determined what "control" means for

[8] In *Huang*, we noted that the fact that the debtor and the creditor-plaintiff were actually in an adversarial relationship suggested that there was no intent on the debtor and the defendants' part to benefit the plaintiff. *Huang*, 147 Or App at 335. This case is similar to *Huang* in that the fact that plaintiff owned the car that she was driving suggests that she, rather than defendant, controlled it.

purposes of ORS 278.215. However, definitions from other contexts indicate that the term "control" contains an element of authority or domination that is absent from the facts alleged in this case. For instance, in construing a statute addressing the control of real property by public utilities, the Supreme Court quoted the definition of "control" in *Webster's Third New Int'l Dictionary* and concluded that "control" in that context meant "the power or authority to guide, manage or direct [such property], or even [the power to] * * * restrain another entity's domination of that property." *Western Generation Agency v. Dept. of Rev.*, 327 Or 327, 332-33, 959 P2d 80 (1998) (citations and internal quotation marks omitted).

In a case that is more factually similar to this one, we construed the meaning of "borrow" in an insurance policy and held that it contained an element of control that the trial court could properly conclude was missing in light of the evidence before it. *Gold v. Casserly Landscape, Inc.*, 121 Or App 62, 64-65, 853 P2d 1341 (1993) (*Gold II*). The vehicle at issue in *Gold II* was registered as a personal vehicle by a corporate officer named Casserly. Casserly had repeatedly used the vehicle for corporate business, and, when he did so, the corporation reimbursed him for expenses related to that use. Additionally, Casserly often lent the vehicle to Vandercook, another officer of the corporation, for transportation to and from work. *Gold v. Casserly Landscape, Inc.*, 104 Or App 313, 315, 801 P2d 844 (1990), *on recons* 107 Or App 441, 812 P2d 33, *rev den* 312 Or 234 (1991) (*Gold I*). Vandercook was using the vehicle in the course of his employment for the corporation when he struck and killed plaintiff's decedent. One of the corporation's insurance policies covered nonowned vehicles, and it defined "non-owned" to exclude vehicles that were leased or borrowed. Plaintiff sued the insurance company on that policy, alleging that the vehicle was "non-owned," in other words, that it had not been borrowed by the corporation and therefore was covered under the policy. *Id.* In *Gold II*, we held that the evidence supported the trial court's conclusion that the corporation had not borrowed the vehicle, in spite of the fact that Vandercook had used it for the corporation's benefit. *Gold II*, 121 Or App at 64-66. In so holding, we noted that

"[t]he ordinary meaning of 'borrow' includes not only that one receives the benefit of the object's use but also that the borrower receives temporary possession, dominion over or control of the object's use. Some element of substantial control is generally understood to be included within the meaning of the act of borrowing."

*Id.* at 65 (citations omitted).

To survive defendant's motion for judgment on the pleadings, plaintiff would have had to allege facts that, if true, could lead a reasonable person to conclude that defendant controlled plaintiff's van while plaintiff used it for defendant's benefit. Our analysis in *Gold II* indicates that use and control are separate issues, and, therefore, the fact that plaintiff used her van for defendant's benefit would not be sufficient to permit a reasonable person to conclude that defendant controlled the van.[9]

In her complaint, plaintiff alleged that she "was engaged in defendant's business" in that she "was driving her privately owned vehicle on approved school business" and that she was "an agent of [defendant] for the transportation of student, staff and non-staff luggage." She further alleged that defendant was "required or instructed" by the camp to transport its luggage separately from the students, that defendant "did not have the staff or employees available to effect the separate luggage transport," that defendant lacked the funds to hire separate luggage transport, and that defendant specifically asked plaintiff to transport the luggage after she volunteered to serve as a chaperone for the field trip. The above allegations say nothing about whether defendant had the right to control plaintiff's van, for example, by determining who could drive it, how it would be driven or used, what could be carried in it, or where and when it would be fueled. Based on our determination in *Gold II* that control and use are separate questions, we know that the fact that plaintiff used her van for defendant's benefit cannot in and of itself be used to establish that defendant had the requisite right to

---

[9] We suggested in *Gold II* that some evidence of control apart from mere use for the other entity's benefit was necessary to show borrowing. *Gold II*, 121 Or App at 64. Implicit in that conclusion is the premise that use for the other's benefit does not suggest control.

control the van. In this case, plaintiff has alleged only the use of her van for defendant's benefit; nothing in her complaint tends to suggest that defendant controlled her van during that use.

In summary, I would conclude that the trial court properly granted defendant's motion for judgment on the pleadings because plaintiff did not allege facts tending to show that defendant controlled plaintiff's van. Consequently, defendant was not required by ORS 278.215(2) to provide plaintiff with uninsured motorist benefits from its self-insurance fund. Although I disagree with the majority as to the analysis that it uses to address plaintiff's uninsured motorist claim, I agree with the result that it reaches on that claim as well as with its resolution of plaintiff's contract claim.